455 P.2d 1019

Mike QUIMBY, a minor, by Jeff and Ann Cavey, his Guardians in Fact, Appellant,

v.

SCHOOL DISTRICT NO. 21 OF PINAL COUNTY, a Municipal Corporation, and Arizona Interscholastic Association, Inc., a Nonprofit Corporation, Appellees.

No. 2 CA–CIV 682.

Court of Appeals of Arizona.

June 20, 1969.

Rehearing Denied July 30, 1969.

Pinal County Legal Aid Society, by Dennis Jenson, Florence, for appellant.

James L. Heckman, Phoenix, for Arizona Interscholastic Association, Inc.

MOLLOY, Chief Judge.

Mike Quimby, a minor, though his guardians in fact, Jeff and Ann Cavey, brought an action against School District No. 21 of Pinal County and the Arizona Interscholastic Association, Inc., a nonprofit corporation, to enjoin the defendants from enforcing regulations regarding plaintiff's eligibility for participation in interscholastic activities at the Coolidge High School. From an order dismissing the complaint and denying his motion for a new trial, plaintiff appeals.

The questions for determination by this court are: (1) does membership by a public school in a voluntary, nonprofit organization such as the Arizona Interscholastic Association constitute an illegal delegation of the authority of the governing body of the school; and (2) is the regulation making plaintiff ineligible to participate in interscholastic sports violative of his judicially protected interests.

The facts briefly stated are as follows. Mike Quimby, age 17, resided with his parents in Randolph, Arizona, and attended Coolidge schools until he completed the eighth grade. His parents then moved to Apache County and he attended the first two years of high school in Snowflake, Arizona. Plaintiff testified that, in the summer of 1968, Judge Shelley of Navajo County, Arizona, directed that Mike Quimby should be committed to the Industrial School for Boys at Fort Grant, Arizona, or in the alternative, that he should return

to Coolidge. Consequently, Mike went to Coolidge to live with Mr. and Mrs. Cavey, who are friends of his parents and who became his guardians. He enrolled in Coolidge High School, and went out for football. After two weeks of football practice, the coach informed Mike that he could not participate in athletics until he had been enrolled in Coolidge High School for two semesters.

Both parties concede that, under the Arizona Interscholastic Association by-laws, the plaintiff is ineligible to participate in interscholastic activities for one school year because he is not living with his natural parents and the guardianship established for him does not meet certain requirements of the Association.[1]

▮ We believe some comment is initially in order in regard to the mootness of this appeal. By the time this opinion is released, the plaintiff will have completed his full year of ineligibility. However, we believe that this case is of sufficient interest to warrant a decision on the merits. It involves such questions as are " * * * capable of repetition, yet evading review * * *" by the nature of time required to adjudicate a final decision. Southern .P. T. Co. v. Interstate Commerce Comm., 219 U.S. 498, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); Wise v. First National Bank, 49 Ariz. 146, 65 P.2d 1154 (1937); and Secrist v. Diedrich, 6 Ariz.App. 102, 430 P.2d 448 (1967).

▮ Appellant's first argument is that, by its joining of the Association and observing its rule, the defendant school district delegated its power and duty to make rules and regulations concerning the government of the school district. There is no question but that the legislature has delegated to the board of education of a high school district the control of the affairs of the district, subject to certain statutory controls. 6 A.R.S. §§ 15–541 and 15–545, as amended, and *see* Garrett v. Tubac-Amado School District No. 5, 9 Ariz.App. 331, 451 P.2d 909 (1969).

Nor is there any question but what inter-school competitive athletics is a part of the school program. In Alexander v. Phillips, 31 Ariz. 503, 254 P. 1056, 52 A.L. R. 244 (1927), the Arizona Supreme Court held that both intra and inter mural athletics are a valid part of the education curriculum and that a stadium built for such activities is a "schoolhouse." Hence, if the district here has turned over control as to any appreciable portion of its athletic program to the Association, there might very well be a violation of the rule that *delegata potestas non potest delegari*. *See* In re Santa Cruz, 8 Ariz.App. 349, 446 P.2d 253 (1968).

▮ We do not believe, however, that the board of education has delegated any governmental power to the Association. There was no allegation that the district could not withdraw any or all of the schools within its responsibility from the Association at any time.[2] The very nature of competitive sports requires that some rules for the competition be set. If the

---

1. Art. IV of the bylaws of the Association reads in part:
   "8. Guardianship Papers.
   "a. When one or both parents are Living. The Board does not accept guardianship papers where one or both parents are living.
   "b. When Is a Legal Guardian Acceptable? A. Legal Guardian is acceptable when the parents are (1) deceased; (2) their whereabouts is unknown; (3) they are committed to a state institution for care; or (4) they have been legally declared incompetent AS STATED ON THE COURT ORDER. The residence of the legal guardian shall be accepted as the student's legal residence."

2. At oral argument, Mr. H. A. Hendrickson, executive secretary of the Association, without objection from opposing counsel, stated that, under the Association's bylaws, any school could withdraw at will.

particular district disapproves of the rules of eligibility set, it need not participate in the program, and, by participating, it in effect makes the eligibility rules its own.

■ Plaintiff's other contention is that the eligibility rule in question is violative of his individual rights. Defendants in this action have made much of the fact that the Association is a voluntary non-profit association. Traditionally, the courts have been reluctant to interfere with the internal affairs of membership associations. Falcone v. Middlesex County Medical Soc., 34 N.J. 582, 170 A.2d 791, 89 A.L.R.2d 952 (1961); Chafee, The Internal Affairs of Associations Not for Profit, 43 Harv.L.Rev. 993 (1930). However, when compelling reasons of public interest were involved, courts have judicially scrutinized association action. 6 Am.Jur.2d Associations and Clubs § 37; 7 C.J.S. Associations § 34.

Recognition of the role of private medical societies and their obligations to public welfare has resulted in courts requiring due process procedures in the societies' processes for admitting and expelling members. Blende v. Maricopa County Medical Society, 96 Ariz. 240, 393 P.2d 926 (1964); Falcone, supra. Labor unions and their authority to deny or expel members have been reviewed. Krause v. Sander, 66 Misc. 601, 122 N.Y.S. 54 (1910); Spayd v. Ringing Rock Lodge No. 665, 270 Pa. 67, 113 A. 70, 14 A.L.R. 1443 (1921). In Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L. Ed. 1152 (1953), the United States Supreme Court held that a private association, whose policy was to forbid Negro voters from voting in Texas elections, could not so act when the state by allowing this association to set the candidates in primary elections was effectually establishing it as an integral part of the elective process. And in numerous cases, similar to the case at bar, courts have made limited inquiry into the "reasonableness" of rules of athletic eligibility. Sult v. Gilbert, 148 Fla. 31, 3 So.2d 729 (1941); Robinson v. Illinois High School Association, 45 Ill.App.2d 277, 195 N.E.2d 38 (1963); Morrison v. Roberts, 183 Okl. 359, 82 P.2d 1023 (1938); Starkey v. Board of Ed. of Davis County Sch. Dist., 14 Utah 2d 227, 381 P.2d 718 (1963).

■ We are here concerned with equal protection rights under state, Ariz.Const. art. 2, § 13, A.R.S., and federal, Fourteenth Amendment, provisions. See Sult, supra; Starkey, supra. Do such rights extend to a non-governmental agency such as this Association? It is our view that they do so extend. Rules adopted by this Association have the direct effect of granting or denying participation in a part of the program of a tax-supported institution. See Alexander v. Phillips, supra. The largest portion of the Association's income is from membership dues, $60,778 in 1968, presumably part of the education budget, derived from taxes. If the Association acts arbitrarily so as to discriminate against certain individuals or groups in these matters, it is our view that there should be a remedy by judicial review. See Wales v. Tax Commission, 100 Ariz. 181, 412 P.2d 472 (1966).

■ The eligibility rule in question, however, we believe has a reasonable relation to a legitimate purpose—to prohibit coaches from overzealous recruiting and players from "shopping" between schools. Once we find such a reasonable basis for legislation, the judicial inquiry is at an end. See Farmer v. Killingsworth, 102 Ariz. 44, 424 P.2d 172 (1967); Uhlmann v. Wren, 97 Ariz. 366, 401 P.2d 113 (1965).

We do not believe that the judicially compelled nature of Mike Quimby's change of residence alters our position. The drawing of lines between categories is always a difficult task and those persons found on the peripheries can feel unjustly injured. The law, however, does not require that lines be zigged and zagged to take care of every individual problem. State v. Bowen, 104 Ariz. 138, 449 P.2d 603 (1969); Allen

v. Graham, 8 Ariz.App. 336, 446 P.2d 240 (1968); State v Superior Court in and for County of Pima, 2 Ariz.App. 458, 409 P.2d 742 (1966). Without passing upon the legislative wisdom of this rule, we hold that it does not violate the constitutionally guaranteed rights of the plaintiff.

Affirmed.

HATHAWAY, J., and MARY ANNE RICHEY, Superior Court Judge, concur.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge MARY ANNE RICHEY was called to sit in his stead and participate in the determination of this decision.