**Carl CRANDALL, by his next friend, Nona Crandall, Plaintiff and Appellee,**

v.

**NORTH DAKOTA HIGH SCHOOL ACTIVITIES ASSOCIATION and F. U. Smith, Executive Secretary, Defendants and Appellants.**

**Civ. No. 9412.**

Supreme Court of North Dakota.

Jan. 26, 1978.

* The Honorable Robert Vogel deeming himself disqualified did not participate; the Honorable Douglas B. Heen, Judge of the Second Judicial District sitting in his place.

Zuger & Bucklin, Bismarck, for defendants and appellants; argued by Leonard H. Bucklin, Bismarck.

McClintock, Butz & Kraft, Rugby, for plaintiff and appellee; argued by Carlan J. Kraft, Rugby.

SAND, Justice.

The North Dakota High School Activities Association [hereinafter Association] appealed from an order, also serving as a memorandum of decision, [1] filed in McHen-

---

1. The memorandum of decision contained adequate findings of fact and conclusions of law to satisfy the requirements of Rule 52(a), North Dakota Rules of Civil Procedure.

ry County district court on 1 September 1977, enjoining it from holding Drake High School student Carl Crandall ineligible to participate in interscholastic activities or from imposing any sanctions upon Crandall or the school by reason of his participation.

The board of directors of the Association, on 22 August 1977, ruled that Carl Crandall would be ineligible for interscholastic activities at the Drake High School for 18 weeks unless his parents moved into the Drake High School district.

Immediately thereafter, Nona Crandall, the mother of Carl Crandall, commenced this action with a summons and complaint seeking a declaratory judgment under Chapter 32–23, North Dakota Century Code, and a judgment restraining and enjoining the Association from declaring Carl ineligible for interscholastic activities (football), and from penalizing Drake High School. At the same time she filed an affidavit and requested the court to issue an order restraining and enjoining the Association from declaring Carl ineligible for interscholastic activities at Drake High School during the pendency of the action.

The court issued its order to show cause and subsequently held a hearing on 30 August 1977, at which time oral testimony was received. After the hearing, the court issued its memorandum opinion which also served as an order. Counsel for the respective parties later stipulated that "it is their understanding and agreement that the Court's order dated September 1, 1977 [memorandum opinion order], is not preliminary in nature and that no further action needs to be taken by any party to make the order final." The court also issued an order confirming the memorandum opinion order "as the final order in this case."

■ The stipulation and confirmation by the court that the order was final appears an obvious effort to satisfy Rule 54(b), North Dakota Rules of Civil Procedure. Under these circumstances, the memorandum opinion order is appealable.

Carl attended the eighth and ninth grades at Drake High School, where he lettered in football. During the 1976–77 school year he was a sophomore at Mott High School. His father, a Methodist minister, was then transferred from Mott to Cleveland, at which point Carl elected to attend Drake High School during the 1977–78 school year. His parents, at the time, were residents of Cleveland.

At the hearing on the order to show cause, Carl testified that he decided to attend Drake High School primarily because he believed its scholastic program to be superior to Cleveland's. The following exchange took place on direct examination of Carl.

"Q So you feel the entire scholastic program is better at Drake?

"A Yes.

"Q And is it correct that there was no football program at Cleveland?

"A Yes.

"Q And the possibility of playing football at Drake must have entered into your discussions and your decisions?

"A Yes.

"Q Did you realize that you may be declared ineligible when you started the process of going to Drake?

"A Yes.

"Q And even knowing that that might happen and, Carl, even if you should not be allowed to play football, will you attend Drake High School this year?

"A Yes, I will.

"Q Do you feel that you have a right to play high school football this year, Carl?

"MR. LENABURG: Whether he has a right, that is a matter for the Court to determine.

"THE COURT: Overruled.

"Q Do you feel you have a right to play football this year, Carl?

"A Yes, I do, very much.

"Q And this possibility or the right to play football you feel is one of the several things that prompted you to transfer to Drake High School?

"A Yes, it was."

The trial court held that the rule upon which the Association found Carl ineligible

was unreasonable and in violation of his personal rights. The trial court's memorandum opinion stated:

". . . it is the opinion of this Court that the action of the Association Board in finding Carl ineligible to participate in interscholastic activities at the Drake High School for a period of eighteen weeks is not only contrary to the rules of the Association which made the determination, but is also arbitrary and unreasonable, and in violation of the personal rights of a student enrolled in an accredited high school of this state."

The memorandum of decision was converted into a final order restraining and enjoining the Association, as stated earlier. The appeal followed.

The Association, the appellant, is an unincorporated association of North Dakota high schools which administers a program of interscholastic activities, including athletic competition among its member schools. Its purpose is stated in Article II of its Constitution:

"The purpose of this Association is to contribute to the education of high school boys and girls of North Dakota by:

a. Administering a program of interscholastic activities, clinics, contests and festivals among its member schools;

b. Elevating the standards of good sportsmanship and encouraging growth in good citizenship, not only of high school students, but also of all others who come in contact with school activities;

c. Protecting member schools, students, and personnel from exploitation by special interest groups;

d. Encouraging pride in scholastic achievement as a fundamental basis for a well-balanced activities program;

e. Supplementing the dramatic, literary, music and physical education programs of the schools and giving due emphasis to those tendencies which promise best to promote the mental and physical health and social well-being of all students."

Article XIII of the Association's By-Laws contains the "Rules of Eligibility" for competitors in interscholastic contests. Section X of Article XIII, which is significant to the issues involved here, provides in part:

"He shall have been in attendance at the school which he represents for eighteen school weeks upon transferring from another school unless his parents have become residents of the school district to which he transferred or unless the school from which he transferred does not offer work of the corresponding year in which he is ranked . . ."

The Association, on appeal, contends it is a voluntary association and that absent allegations of fraud, mistake, bad faith, or collusion, the courts should not interfere in its internal affairs, which include its eligibility rules. Alternatively, the Association contends that its eligibility rules satisfy the requirement of reasonableness.

Although the Association considers and refers to itself as a voluntary association, it was brought out during oral argument, and it is common knowledge, that its program, by various means, is primarily supported by and through the use of public funds. Some of the items which are paid for from public funds, to name a few, include salaries of coaches, costs of uniforms, costs of equipment, costs of transportation, the cost for maintaining a field or area to practice, and the payment of membership dues, which is substantial amount.

The Legislature has endorsed the program of the Association by the enactment of § 15–29–08(20), NDCC, which provides as follows:

"The powers and duties of the school board of a public school district shall be as follows:

.    .    .    .    .

20. Recognizing the necessity for an organization of schools to administer a program of interscholastic activities, any public school, so classified by the state department of public instruction, is authorized to become a member of the North Dakota high school activities

association, presently located in the city of Valley City, North Dakota, upon written application of its school board and said school board shall pay the cost of such membership out of the funds of such school in the same manner as any valid school expense is paid."

In our view, the Association has been recognized by the Legislature as performing a valid, needed function in administering interscholastic activities and as such is acting in a manner comparable to a quasi-governmental body. We further believe rules are necessary to accomplish and fulfill the purposes and objectives of the Association.

Although Drake High School voluntarily agreed to be a member of the Association and pay dues as permitted by law and to abide by the rules of the Association, we believe that the trial court had jurisdiction to review the regulations in question because the Association is primarily supported by public funds and is performing a quasi-governmental function.

In *Quimby v. School District No. 21 of Pinal County*, 10 Ariz.App. 69, 455 P.2d 1019 (1969), the Arizona Court of Appeals, after a student alleged his individual rights were being violated, reviewed a regulation making a student ineligible for interscholastic activities. The Court, discussing · judicial review of the state high school activities association, stated:

"Rules adopted by this Association have the direct effect of granting or denying participation in a part of the program of a tax-supported institution. [Citation omitted.] The largest portion of the Association's income is from membership dues, $60,778 in 1968, presumably part of the education budget, derived from taxes. If the Association acts arbitrarily so as to discriminate against certain individuals or groups in these matters, it is our view that there should be a remedy by judicial review." *Quimby, supra,* 455 P.2d at 1022.

This concept applies to the instant case.

We are not persuaded by the Association's argument that the court should not interfere with the internal affairs of a voluntary association absent fraud, lack of jurisdiction, or the invasion of property or pecuniary rights or interests. We agree with the trial court that it had jurisdiction. However, we do not concur in the results reached by the trial court.

The responsibility for the total educational process rests with the Legislature and the school officials. We must assume that they collectively are concerned with the development of the whole person without overemphasizing extra-curricular activities, including sports, so as not to interfere with the academic goals and responsibilities of life, which is the objective of the educational system. See also, Article VIII, Education, North Dakota Constitution.

Until the school system itself undertakes to administer the extra-curricular activities, or separates itself completely, the Association will have to continue to perform this function; otherwise we would have a vacuum in which each school would be guided solely by its own individual concepts which could invite disaster.

As stated in *Bunger v. Iowa High School Activities Association*, 197 N.W.2d 555, 561 (Iowa 1972):

"The association did not usurp the regulatory functions of individual schools; the schools turned over those functions to the association."

■ The purpose behind the Association's eligibility rules pertaining to athletics, found in Article XIII, Section X, may be stated as being two-fold: (1) to prevent schools from recruiting or pirating students for interscholastic competition; and (2) to eliminate athletics as a student's reason for transferring from one school to another.

We believe the purpose behind the rules is legitimate and that the Association's eligibility rules are reasonably related to that purpose. See, *Quimby, supra,* 455 P.2d at 1022.

Court decisions have established that voluntary associations have the power to adopt reasonable bylaws and rules which, if not in violation of a law or public policy, will be binding upon their members. See, e. g.,

*Kentucky High School Athletic Association v. Hopkins County Board of Education,* 552 S.W.2d 685 (Ky.App.1977). A general statement of the law is found at 6 Am. Jur.2d, *Associations and Clubs,* § 6:

"Constitutional provisions, bylaws, rules, and regulations of voluntary associations will be deemed to be valid and binding upon members consenting thereto so long as they are not immoral, unreasonable, contrary to public policy, or in contravention of the law of the land. Members may adopt and enforce any just, fair, and reasonable rules and regulations that may be needed to promote harmony among themselves and advance the best interests of the association, although the effect may be to limit the freedom of action that they would enjoy if they were not connected with the association."

In *Libby v. Perry,* 311 A.2d 527, 532 (Me. 1973), the Supreme Judicial Court of Maine recognized that the constitution and bylaws of a voluntary association, when not unreasonable or contrary to public policy or constitutional or statutory law, make up a valid and enforceable contract between the members and the association. The Court noted:

"An individual in becoming a member impliedly agrees to be bound by, and becomes a party to, such contract, and his rights and duties are measured by the terms of such constitution and bylaws."

◼ The Minnesota Supreme Court, in *Brown v. Wells,* 288 Minn. 468, 181 N.W.2d 708, 711 (1970), held that where eligibility rules for hockey tournaments were adopted to de-emphasize extra-curricular activities detracting from the total educational process, such rules were not unreasonable or arbitrary. The Court said:

". . . we must be controlled by well-established authority which recognizes that it is the duty of courts, regardless of personal views or individual philosophies, to uphold regulations adopted by administrative authorities unless those

regulations are clearly arbitrary and unreasonable."

We agree with this standard of review.

◼ Carl also asserted that the eligibility rules are arbitrary and unreasonable because they contain no exception for students who transfer solely for academic reasons. The exceptions to the eligibility rules are found in subsection (b), Section X, Article XIII, of the Association's By-Laws:

"A student who, because of unavoidable circumstances, such as broken home conditions, death of parents or guardian, abandonment, or other exceptional or emergency reasons, finds it necessary to change schools in order to have a home, may be declared eligible by the Board of Directors, provided the administrator of each school involved files a statement with the NDHSAA that the change was necessary and there was no undue influence. . . ."

The eligibility rules in Section X apply to all member schools and students and the Association's Board of Directors can make exceptions only as provided in subsection (b), although the Board can hear appeals from dissatisfied participants, parents, contest officials, coaches, or member schools.

Even though Crandall argued that the rules should not apply to him because he transferred primarily for academic reasons, the fact remains that the eligibility rules make no distinction for this reason. Perhaps the Association does not make this distinction because of the administrative burden of a case-by-case ruling. However, we do not believe that this Court should determine the wisdom of such rules when they are reasonable and when they accomplish the legitimate purpose for which they were promulgated without being discriminatory. These rules apply equally to Association member schools and students. See, e. g., *Bruce v. South Carolina High School League,* 258 S.C. 546, 189 S.E.2d 817, 819 (1972).

Under these circumstances, justice requires that we reverse the order of the district court and remand the case for the purpose of dissolving the restraining order

against the North Dakota High School Activities Association.

█ We also find it necessary to state that the Association should not impose any sanctions or otherwise penalize Drake High School for the past activity, as suggested in the Association's brief, because, as the record reflects, the school acted pursuant to a court order. It would be unjust to penalize or sanction the high school for complying with a court order, particularly where the high school was not a party to the proceedings and was not in a position to take appropriate action to either modify or set aside any judicial order. The Association,

however, may impose upon Carl Crandall the eighteen-week waiting period in the new school year (1978–1979) if he attends Drake High School unless his parents take up residence there.

The order appealed from is reversed and this matter is remanded to the trial court with instructions to dissolve the restraining order against the North Dakota High School Activities Association.

Because this is a matter of public concern, no costs are allowed to either party.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VOGEL, JJ., concur.