**HAWKINS CHEMICAL, INC.,**
**Plaintiff and Appellant,**

v.

**Lloyd McNEA, R. F. Saunders, Dakco Distributors, Inc., and Mon-Dak Chemical and Supply Co., Defendants and Appellees.**

**Civ. No. 10164.**

Supreme Court of North Dakota.

May 13, 1982.

 Pringle & Herigstad, Minot, for plaintiff and appellant; argued by Jan M. Sebby, Minot.

McGee, Hankla, Backes & Wheeler, Minot, for defendant and appellee Lloyd McNea; argued by Robert A. Wheeler, Minot.

Eaton, Van de Streek & Ward, Minot, for defendants and appellees Saunders, Dakco Distributors and Mon-Dak Chemical & Supply Co.; argued by Jonathan C. Eaton, Jr., Minot.

SAND, Justice.

This is a motion to dismiss an appeal arising out of a declaratory judgment action commenced by Hawkins Chemical, Inc. [Hawkins] to determine the rights of the parties arising out of a contract to purchase and a noncompetition agreement entered into between Hawkins and Lloyd McNea, R. F. Saunders, Dakco Distributors, Inc., and Mon-Dak Chemical and Supply Co., a wholly owned subsidiary of Dakco.

The noncompetition agreement in effect provided that in consideration for and as an inducement for Hawkins to purchase the assets related to Mon-Dak's chemical sales and distribution business and its janitorial business located at its Minot and Billings divisions, McNea (the manager of Mon-Dak), Saunders (the president of Dakco), Dakco and Mon-Dak agreed that for a period commencing on 1 March 1979 and terminating on 28 February 1987 they, together or individually or through any other business subsidiary, corporation or organization would not engage in any business competition, directly or indirectly, with Mon-Dak's Minot and Billings divisions in the states of Montana, North Dakota, South Dakota, Minnesota, Iowa and Wisconsin. One of the assets bought by Hawkins was the name and goodwill of Mon-Dak. The noncompetition agreement also provided that Hawkins would pay Mon-Dak a total of $218,000 for the restrictive covenant with $50,000 paid at closing and $56,000 annually for three years.

Hawkins' complaint alleged that the principal place of Mon-Dak's chemical sales and distribution business and its janitorial service was in Minot, North Dakota, and the complaint further alleged that in December of 1979 McNea commenced a chemical sales and distribution business, as well as a janitorial business, in Minot, North Dakota, contrary to the noncompetition agreement.

McNea separately answered and alleged as an affirmative defense that the noncompetition agreement restricted his right to engage in a lawful trade or business and was void or unenforceable. Saunders, Dakco and Mon-Dak filed an answer acknowledging the basic agreement and counterclaimed by alleging that pursuant to the agreement Hawkins agreed to pay Mon-Dak, now known as Dakco the sum of $218,000.00, of which only $50,000.00 has been paid.

The parties stipulated to the facts of the case, and after a bench trial the court issued its memorandum opinion which concluded that the noncompetition agreement was in derogation of § 9–08–06, North Dakota Century Code, and was overbroad and unenforceable. The memorandum opinion stated that the defendant McNea may prepare partial findings of fact embodying the court's decision in this case. The attorney for Hawkins, Mr. Jan Sebby, then wrote a letter to the Judge and other counsel expressing doubt about the court's opinion. The court in response wrote a letter dated 17 December 1980 to all participating counsel, which concluded with the statement, "Whether the invalidity of the covenant abrogates Hawkins' obligation to pay beyond McNea's violation is, I feel, a matter to be left to either further proceedings in this case or in other litigation.... I will therefore hold in abeyance the execution of any findings of fact until I am informed of counsel's decision relating to these findings." Later the court issued an addendum to the memorandum opinion which concluded, "In all other respects, this Court's previous Memorandum Opinion shall remain intact and pursuant to Rule 54(b), Judgment shall be entered accordingly."

Revised findings of fact and conclusions of law were prepared and submitted to the court and executed on 11 March 1981. The conclusions of law, in part, stated:

"The Defendants are entitled to judgment dismissing Plaintiff's Complaint with prejudice and for their reasonable costs and disbursements.

"There shall be a separate trial in regard to the counterclaim of R. F. Saunders, Dakco Distributors, Inc., and Mon-Dak Chemical and Supply Co. against Hawkins Chemical, Inc.

"LET JUDGMENT BE ENTERED ACCORDINGLY.

"Dated at Minot, North Dakota, this 11th day of March, 1981."

On 13 March 1981 judgment was entered in which the plaintiff's complaint was dismissed with prejudice and costs allowed to the defendants. The judgment, in part, also provided:

"There shall be a separate trial in regard to the counterclaim of R. F. Saunders, Dakco Distributors, Inc., and Mon-Dak Chemical and Supply Co. against Hawkins Chemical, Inc."

Notice of entry of judgment was served on the parties by mail on 23 March 1981. No appeal was taken at this time.

In the meantime the counterclaim was tried to the court and the court on 8 December 1981 issued its findings of fact, conclusions of law and order for judgment and on 9 December 1981 a judgment was entered in favor of Mon-Dak, now known as Dakco Supply Co., against Hawkins in the total sum of $112,724.44, including costs and disbursements. This judgment was amended to make it a total of $120,718.28 and the judgment was entered on 10 December 1981. Notice of entry of amended judgment was served upon the parties by mail on 9 December 1981. On 1 February 1982 Hawkins filed a notice of appeal from the amended judgment dated 10 December 1981 and the earlier judgment dated 13 March 1981.

Lloyd McNea, one of the defendants, moved this Court to dismiss Hawkins' appeal from the judgment entered on 13 March 1981 dismissing the complaint with prejudice on the basis that it involved the merits of the action and was separately appealable and that no appeal was taken therefrom within the time permitted by the statute and rules. McNea contends that the court complied with Rule 54(b), North Dakota Rules of Civil Procedure, and as a result the judgment of 13 March 1981 dismissing the complaint was a final judgment and the appeal should have been taken within the time specified [60 or 90 days, Rule 4, NDRAppP] and failure to do so renders the appeal ineffective.

■ Rule 54(b), NDRCivP, as pertinent to this matter, provides as follows:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only _upon an express determination_ that there is no just reason for delay and _upon an express direction_ for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." [Underscoring ours.]

The pertinent part of this rule is derived from the Federal Rules of Civil Procedure, consequently the construction placed upon this rule by the federal courts is entitled to appreciable weight by this Court. *In re Estate of Elmer*, 210 N.W.2d 815 (N.D. 1973).

In *Minch v. City of Fargo*, 297 N.W.2d 785 (N.D.1980), Justice Pederson compiled the following cases in which this Court dismissed the appeal for lack of an appropriate

Rule 54(b) order. *Perdue v. Knudson*, 154 N.W.2d 908 (N.D.1967); *Berg v. Kremers*, 154 N.W.2d 911 (N.D.1967); *Mitzel v. Schatz*, 167 N.W.2d 519 (N.D.1968); *Hodny v. Hoyt*, 224 N.W.2d 826 (N.D.1974); *Melland Firestone, Inc. v. Streich*, 226 N.W.2d 141 (N.D.1975). The compilation also discloses that this Court heard some cases in which a Rule 54(b) order was not a part of the record but the parties stipulated that noncompliance with Rule 54(b) be waived, in addition the record also disclosed that the subject matter was final: *Zuraff v. Empire Fire & Marine Insurance Co.*, 252 N.W.2d 302 (N.D.1977); *Crandall v. N.D. High School Activities Ass'n.*, 261 N.W.2d 921 (N.D.1978). These cases, however, are readily distinguishable from the instant case because the parties in those cases agreed and stipulated that the subject matter was final and that Rule 54(b) be waived; whereas in the instant case one of the parties is actively disputing the finality of the subject matter and has not agreed that Rule 54(b) requirements be waived or that they have been met.

 Even though the parties cannot confer jurisdiction by stipulation, we nevertheless recognize the practical application of the concept that the parties can agree to be bound by the decision even though the court does not have jurisdiction. The expanded concept of arbitration supports this rationale. However, if one of the parties disagrees regarding compliance with Rule 54(b) and takes an active position that the requirements have not been met and that the court does not have jurisdiction, we cannot disregard Rule 54(b) and proceed with the appeal.

Because an order or judgment in a case involving multiple claims or issues, which were not all decided, is not appealable without first obtaining a Rule 54(b) order or certificate it might suggest that the time for appeal does not begin to run until all the claims or issues have been decided and the judgment has been entered thereon. However, case history discloses otherwise.

 After a Rule 54(b) certification or order has been made and a judgment has been entered the time for appeal begins to run. Wright & Miller, Federal Practice and Procedure § 2661; *A. O. Smith Corp. v. Sims Consol. Ltd.*, 647 F.2d 118 (10th Cir. 1981); *Page v. Preisser*, 585 F.2d 336 (8th Cir. 1978). The same concept [1] was followed in *Sturkie v. Han*, 627 P.2d 296 (Hawaii App.Ct.1981) and in *Dennis v. Southeastern Kansas Gas Co., Inc.*, 227 Kan. 872, 610 P.2d 627 (1980). We are therefore constrained to conclude that the time of appeal begins to run after a proper Rule 54(b) certification or order has been made and the judgment has been entered.

We need to determine what are the basic requirements for a Rule 54(b) order or certification so as to make the subject matter appealable.

In *Encoder Communications, Inc. v. Telegen, Inc.*, 654 F.2d 198, 203 (2nd Cir. 1981), the court said an order is appealable only after the appellants have obtained "an express determination that there is no just reason for delay and ... an express direction for the entry of judgment" from the court as required by Rule 54(b). The Court in *A. O. Smith Corp. v. Sims Consol. Ltd.*, supra, and in *Stephenson v. Calpine Conifers II, Ltd.*, 652 F.2d 808 (9th Cir. 1981) held that if there was no express Rule 54(b) certification in the order, the order was not final and was, therefore, not appealable. In *Sargent v. Johnson*, 521 F.2d 1260, 1264 (8th Cir. 1975), the court in denying an appeal said:

"Yet, we think the present appeal fails to appreciate the salutary purpose and importance of Rule 54(b). The efficient administration of justice requires avoidance of piecemeal appeal and interlocutory adjudication"

---

1. In instances where a proper Rule 54(b) order or certification has also been made, the subject matter has also been considered res judicata. However, if the proper certification is not made the subject matter is not considered res judica-

ta. *Wise v. Georgia State Bd. for Examination, Qualification and Registration of Architects*, 244 Ga. 449, 260 S.E.2d 477 (1979); *Culwell v. Lomas & Nettleton Co.*, 242 Ga. 242, 248 S.E.2d 641 (1978).

The appellant in *Sargent* had argued that a practical test rather than a technical test should govern in determining the finality of an order or judgment.

McNea, in moving to dismiss the appeal as being untimely argued that the Rule 54(b) requirement was partially satisfied by the court in its letter of 11 March 1981 which constituted an express determination by the court that there was no just reason for delay of entry of a final judgment as to McNea. The court, in the letter, stated: [2]

"I think it is important to Mr. McNea, at least, that his status be clarified as soon as possible if there is going to be an appeal. At this time there has been no hearing date set for the hearing on the counterclaim and in view of this I will accordingly sign the Findings submitted by Mr. Wheeler which appear to be in proper form."

McNea also argued that the signing of the findings of fact, conclusions of law and order for judgment satisfied the "express direction for the entry of judgment" requirement of Rule 54(b).

The court's letter of 11 March 1981 was prompted by a letter to the court dated 9 March 1981 by Jonathan C. Eaton, Jr., counsel for McNea, addressed to Judge Berning, which among other things stated:

" . . . but in order to save our right to one appeal in the event the same becomes necessary, I respectfully request that the Court abstain from making a Rule 54(b) determination that a final judgment should be entered in favor of McNea at this point. In fact, I think the record should affirmatively show that the entry of a final judgment, adjudicating all of the claims and liabilities of all of the parties, shall be held in abeyance until after the determination of the Hawkins-Dakco Counter-Claim."

It concluded by stating:

"If a 'final' judgment were entered in favor of McNea now it would force the other parties to take an appeal, if that were their choice, prior to the trial of the Dakco Counter-Claim and, thus, might result in the case going up twice."

This prompted the letter from the Court dated 11 March 1981 which has been mentioned earlier.

The conclusions of law among other things stated:

"There shall be a separate trial in regard to the counterclaim of R. F. Saunders, Dakco Distributors, Inc., and Mon-Dak Chemical and Supply Co. against Hawkins Chemical, Inc."

The conclusions of law were followed by the usual concluding statement, "LET JUDGMENT BE ENTERED ACCORDINGLY."

Generally the party intending to appeal secures the Rule 54(b) order or certification from the court. In this instance the order was sought by neither party but was resisted by Hawkins through his counsel in a letter dated 9 March 1981. This letter may have been prompted by the statement in the court memorandum opinion stating "that a ruling on the counterclaim would require further proceedings" and by the addendum to the memorandum opinion dated 3 March 1981 which concluded, "In all other respects, this Court's previous Memorandum Opinion shall remain intact and pursuant to Rule 54(b), Judgment shall be entered accordingly."

In support of the motion to dismiss, counsel argued that the court's letter and the statement in the addendum to the memorandum opinion constituted "an express determination that there is no just reason for delay and . . . an express direction for the entry of judgment as required by Rule 54(b)." The addendum to the memorandum opinion contained a direction to enter judgment, but the intervening statements by the court in its letters and the concluding statement in the order for judgment modified the earlier statement and left doubt.

█ Generally every finding of fact, conclusion of law and order for judgment con-

2. The letters (9 March 1981 and 11 March 1981) referred to were made a part of the official record forwarded by the clerk of court to this Court by a supplemental certificate filed.

tains the permissive statement "let judgment be entered accordingly." Consequently this statement does not constitute "an express direction for the entry of judgment" as provided for in Rule 54(b).

■ The parties to an action should not have to speculate or engage in any form of rationalization to determine if the judgment is to be considered a final judgment under Rule 54(b) so as to activate the time period in which an appeal must be taken. The certificate, order, or statement by the court should be clear and explicit so as to leave no doubt. This is one of the objectives of Rule 54(b).

■ While the rule does not prescribe the procedure for obtaining a certificate or order and in most cases the party simply files a motion requesting the court to make the determination, nevertheless the rule contemplates that the court make a separate and distinct statement directing that judgment be entered so as to leave no doubt in the minds of the affected parties that upon entry of judgment the time of appeal will begin to run. This is what is meant by an express determination and an express direction for the entry of the judgment. This is particularly true where neither party sought a Rule 54(b) order and as in this instance one of the parties resisted the issuance of a Rule 54(b) order.

■ Generally, the courts in discussing the requisites of Rule 54(b) either use the expression "order" or "certification." This is a clear indication that at the very least a separate statement [3] in the official record of the case is required to make the order or judgment appealable. This is a responsibility [4] of the attorney and, if need be, the attorney should specifically request the court to make an appropriate order, certificate, or separate statement.

The court in *Local P–171, Etc. v. Thompson Farms Co.*, 642 F.2d 1065 (7th Cir. 1981), in a footnote said:

"The direction for entry of judgment under Rule 54(b) has effects other than signalling appealability. The time for filing an appeal and other deadlines are tied to the date of entry of judgment, for example. See generally 10 C. Wright and A. Miller, *supra*, note 6 at § 2661.

The most important other effect is to compel the judgment debtor to pay, since writs of execution may issue after judgment is entered ...." Footnote 7 at 1071.

The court also said:

"The purely formal aspect of Rule 54(b), the requirement of an 'express direction for the entry of judgment', serves a different function. Before that language was added to Rule 54(b) in 1948, litigants had no reliable way to determine whether a particular order which determined fewer than all pending claims was final and appealable, and so were forced either to file appeals from an order even arguably final or to risk losing the right to appeal it. The talismanic direction for the entry of judgment was added to serve

---

**3.** The State of Georgia apparently to avoid any misunderstanding provides in its Section 6–701(a)(2)(A) that an appeal may be taken "where the trial judge in rendering an order, decision or judgment not otherwise subject to direct appeal, certifies within ten days of entry thereof that such order, decision or judgment is of such importance to the case that immediate review should be had, the supreme court or court of appeals may thereupon, in their respective discretions, permit an appeal be taken from such order, decision or judgment, if application is made thereto within ten days after such certificate is granted."

**4.** In *Conway v. Parker*, 304 N.W.2d 83 (N.D. 1981), in footnote 2, we said:

"The rationale employed on appeal becomes fraught with anomalies whenever the appellant urges a reversal because of an alleged procedural error in or by the trial court, but urges that any errors committed by the appellant in seeking the appeal be overlooked."

In this case the converse would be equally appropriate. The rationale employed in a motion to dismiss an appeal becomes fraught with anomalies whenever the movant, the appellee, urges a dismissal on the basis that the appellant failed to appeal within the statutory period, but at the same time urges that any shortcomings, errors, or failure by the court or movant to strictly comply with the rule to make the subject matter appealable be overlooked.

as an unambiguous signal. See *Sears, Roebuck and Co. v. Mackey,* 351 U.S. 427, 432, 76 S.Ct. 895, 897, 100 L.Ed. 1297 (1956)." 642 F.2d at 1072.

█ After having reviewed the record we have reservations that the requirements of Rule 54(b) have been met, specifically regarding an express statement that the judgment be entered. In considering the record, the required statement that there is no just reason for delay arguably may have been met but that in itself is not sufficient. The "express direction for the entry of judgment" is also a legal requirement and must be met. In this instance this requirement was not satisfied. Furthermore, we have some doubts that the basic declaratory judgment action is not interrelated with the counterclaim and that it will not be affected by the outcome of the counterclaim and on that basis the statement may have been inappropriate. Under these circumstances we believe the ends of justice will be better served by giving the parties their day in court on the appeal. Even assuming on appeal that it is determined that the trial court was correct in its determination, the parties would only be out the extra work in briefing and arguing the cause. No party would have been deprived of any legal remedy. Under these circumstances we believe it is better judicial practice to allow the parties to have their day in court on an appeal.

In this instance an appeal has been taken from both judgments involved and the ends of justice would be more clearly served by permitting the issues to be argued fully on appeal. Accordingly, the motion to dismiss the appeal from the judgment dated 13 March 1981 dismissing the complaint with prejudice is denied.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.