[806 NE2d 970, 774 NYS2d 857]

LONGWOOD CENTRAL SCHOOL DISTRICT, Appellant, v SPRINGS UNION FREE SCHOOL DISTRICT, Respondent.

Argued January 6, 2004; decided February 17, 2004

## POINTS OF COUNSEL

*Ingerman Smith, L.L.P.,* Northport (*Neil M. Block* of counsel), for appellant. I. The term "resided" in Education Law § 3202 (4) (a) should be interpreted as permanent residence or domicile. (*Catlin v Sobol,* 155 AD2d 24, 77 NY2d 552; *State of New York v Collins,* 78 AD2d 295; *Matter of Seitelman v Lavine,* 36 NY2d 165; *Commercial Mut. Ins. Co. v Wagschall,* 256 AD2d 300; *Unanue v Unanue,* 141 AD2d 31; *Daley v Daley,* 257 AD2d 593; *Three Vil. Cent. School Dist. v Brentwood Union Free School Dist.,* 167 AD2d 385, 77 NY2d 806; *Matter of Jeter v Ellenville Cent. School Dist.,* 41 NY2d 283.) II. The Appellate Division erred in concluding the school district in which the shelter is located is responsible for the subject children's tuition, since they could have attended the schools in which the shelter is located. (*Matter of Delgado v Freeport Pub. School Dist.,* 131 Misc 2d 102; *Vaughn v Board of Educ.,* 64 Misc 2d 60.) III. The Appellate Division's interpretation of the term "resided" in Education Law § 3202 (4) (a) as meaning mere physical presence creates an absurd result. (*Board of Educ., Commack Union Free School Dist. v Port Jefferson Union Free School Dist.,* 134 AD2d 315; *Matter of Newcomb,* 192 NY 238.)

*Costa & Cuthbertson, LLP,* Melville (*Mark A. Cuthbertson* and *Thomas L. Costa* of counsel), for respondent. I. The Appellate Division correctly held that the word "resided" in Education Law § 3202 (4) (a) includes residence of a temporary nature. (*Board of Educ., Commack Union Free School Dist. v Port Jefferson Union Free School Dist.,* 134 AD2d 315; *Matter of Delgado v Freeport Pub. School Dist.,* 131 Misc 2d 102; *Vaughn v Board of Educ.,* 64 Misc 2d 60; *Matter of Newcomb,* 192 NY 238; *Thompson v Mundheim,* 180 Misc 1002, 266 App Div 1001; *People v Bolden,* 81 NY2d 146; *Matter of Hosley v Curry,* 85 NY2d 447; *Laufer v Hauge,* 140 AD2d 671; *Matter of Larkin v Herbert,* 185 AD2d 607; *Antone v General Motors Corp.,* 64 NY2d 20.) II. Longwood's reliance on *Catlin v Sobol* (77 NY2d 552 [1991]), Opinions of the Commissioner of Education and the presumptive validity of the Department of Social Services certifications is misplaced. (*Matter of Jeter v Ellenville Cent. School Dist.,* 41 NY2d 283; *Three Vil. Cent. School Dist. v Brentwood Union Free School Dist.,* 167 AD2d 385, 77 NY2d 806.)

III. Affirmance of the Appellate Division's decision will not lead to "absurd" results. (*Catlin v Sobol,* 77 NY2d 552; *Matter of Delgado v Freeport Pub. School Dist.,* 131 Misc 2d 102; *Vaughn v Board of Educ.,* 64 Misc 2d 60.) IV. Even if this Court adopts a domicile standard for Education Law § 3202 (4) (a), Springs Union Free School District is still not liable. (*Matter of Brunner,* 41 NY2d 917; *Matter of Newcomb,* 192 NY 238; *Matter of Palla v Suffolk County Bd. of Elections,* 31 NY2d 36; *Matter of Daly,* 178 Misc 943; *District of Columbia v Murphy,* 314 US 441; *Unanue v Unanue,* 141 AD2d 31; *Orozco v Sobol,* 674 F Supp 125.)

## OPINION OF THE COURT

ROSENBLATT, J.

On this appeal, we decide which of two school districts must bear the educational costs for children who, immediately before their placement in foster care, lived in a homeless shelter with their mother. The question is governed by Education Law § 3202 (4) (a), and the outcome turns on where the children "resided" within the meaning of the statute. Because the term is undefined, we must determine whether it means mere physical location or also includes an element of permanency. We hold that, under the statute, physical presence alone does not qualify as "residence," and therefore conclude that the Springs Union Free School District—the children's last permanent residence—is responsible for their instructional costs.

The mother of the four children for whom reimbursement is sought rented a home within the Springs school district beginning in December 1991, where the family lived until they were evicted in July 1993. Over the next couple of months, the children moved to various temporary housing arrangements at motels or stayed with relatives. For part of this time, the mother was incarcerated for a parole violation. In August 1993, the family moved into Shelter Plus, a homeless shelter located in Lake Grove. While there, the children did not attend school. In September and October 1993, the Suffolk County Department of Social Services placed all four of the children in foster care, and the children attended school in the Longwood district. Each child's DSS-2999 form (which notifies a school district of a foster child placed within its district) listed the "district of origin" as Springs.

Longwood filed a notice of claim with Springs for the cost of the children's education. Upon nonpayment, Longwood com-

menced three actions seeking tuition reimbursement for the 1994-1995, 1995-1996 and 1996-1997 school years. Both parties moved for summary judgment. Supreme Court consolidated the actions and granted Longwood's motion. Interpreting the term "resided" in Education Law § 3202 (4) (a) to include an intent to remain permanently, the court determined that the mother's last permanent home was in the Springs district and therefore held it liable for the education costs. Springs appealed. The Appellate Division reversed, concluding that the mother's temporary residence at Shelter Plus obligated the district within which the shelter was located to pay for the education of her children. Longwood appealed, and we now reverse.

Education Law § 3202 (4) (a) states that

> "the cost of instruction of pupils placed in family homes at board by a social services district or a state department or agency shall be borne by the school district in which each such pupil *resided* at the time the social services district or state department or agency assumed responsibility for the placement, support and maintenance of such pupil" (emphasis added).

Springs interprets "resided" to mean mere physical location, and thus views the family's transient stay at Shelter Plus as absolving it from any obligation to cover the cost of the children's education. Conversely, Longwood argues that "resided" must include an intent to remain in a place permanently. Under Longwood's view, a brief stay at a shelter does not amount to residence, and that the family's last permanent residence is what counts. We agree with Longwood and conclude that the term "resided" in Education Law § 3202 (4) (a) requires an intent to remain in a place permanently.

Within the general scheme of Education Law § 3202, this Court and the Department of Education have consistently interpreted residence as akin to domicile. Domicile requires bodily presence in a place with an intent to make it a fixed and permanent home (*see Matter of Newcomb*, 192 NY 238, 250 [1908]). An existing domicile is assumed to continue until a new one is acquired, and Education Law § 3202 creates a rebuttable presumption that children share the domicile of their parent (*see Catlin v Sobol*, 77 NY2d 552, 560 [1991]). Section 3202, which "sets out the framework for determining when and under what circumstances a school district is obligated to provide free education" (*id.* at 559), is designed to allocate costs sensibly be-

tween school districts and to avert burdening them with the costs of educating nonresident children.

Section 3202 (1) begins with the promise of free education, by which a student is "entitled to attend the public schools maintained in the district in which such person resides without the payment of tuition." It is axiomatic under this provision that "residence is established by one's physical presence as an inhabitant within the district, combined with an intent to remain" (*Appeal of Stokes*, 32 Ed Dept Rep 93, 95 [Decision No. 12,769] [1992]; *see also Appeal of Daniels*, 37 Ed Dept Rep 537 [Decision No. 13,926] [1998]; *Appeal of Varghese*, 34 Ed Dept Rep 455 [Decision No. 13,380] [1995]; *Appeal of Bonfante-Ceruti*, 31 Ed Dept Rep 38 [Decision No. 12,561] [1991]). Thus, every school district must "provide tuition-free education only to students whose parents or legal guardians reside within the district" (*Stokes*, 32 Ed Dept Rep at 94). Accordingly, while each child is guaranteed a free education, the intent-to-remain element in "resides" provides a limit on which pupils may receive a free education from a particular school district.

This Court adopted a similar interpretation of residence under Education Law § 3202 (4) (b), which provides that children cared for in free family homes or family homes at board are deemed residents of the district where the home is located only if the home is their "actual and only residence." Recognizing that the domicile of a child is assumed to be the domicile of the parent, we held that "actual and only residence" meant "permanent domicile," such that a showing of a surrender of parental control is required in order to impose the cost of education on the district in which the family home is located (*see Catlin*, 77 NY2d at 560).

The history of Education Law § 3202 (4) (a) reveals a theme similar to that of section 3202 (1) and (4) (b)—to distribute fairly the costs of education among school districts. Section 3202 (4) (a) was designed to "relieve school districts of the obligation which exists in certain cases . . . to bear the financial burden of educating nonresident children" (State Ed Dept Mem, Bill Jacket, L 1973, ch 867, at 6; *see also Matter of Jeter v Ellenville Cent. School Dist.*, 41 NY2d 283, 285 [1977]). This "chargeback" solution provided "continuity of responsibility within the educational system" for children who could not be placed within their "original communities" (State Dept of Mental Hygiene Mem, L 1973, ch 867, at 12, 13). Section 3202 (4) (a)'s legislative history also recognized that the enactment would facilitate

foster care placement because the costs of education would not shift based on the placement of a child into a foster home (*see* Budget Report, Bill Jacket, L 1973, ch 867, at 17).

The Department of Education has also interpreted "resided" in the context of Education Law § 3202 (4) (a) to mean "physical presence as an inhabitant of the district combined with an intent to remain" (*Appeal of Haldane Cent. School Dist.*, 32 Ed Dept Rep 156, 159 [Decision No. 12,790] [1992]). In *Haldane*, the children lived with their mother in a truck on a campground in the Pine Bush School District before DSS assumed custody. Haldane, the school district which the children attended while in foster care, sought to charge Pine Bush for the tuition costs. In dismissing the appeal, the Commissioner concluded that "there is no indication whatsoever that the family intended to establish a residence at the [Pine Bush] campground" (*id.*). The Commissioner reasoned that "[s]ince a residence is not lost until another residence is established through both intent and action expressing such intent . . . petitioner needs to establish, with the assistance of DSS, the children's last permanent residence before they were found at the campground" in order to ascertain which school district would be responsible for the children's tuition costs (*id.*).

Here, when the Department of Social Services assumed responsibility for their care, the children's residence, as we have defined it, was in the Springs district. Even after eviction, the children are presumed to have the same residence until a new residence—a physical location plus an intent to remain—is established. The series of temporary stayovers that followed the eviction, including the time at Shelter Plus, did not rebut the presumption that Springs was their residence within the meaning of section 3202 (4) (a). Thus, we also reject Springs's alternative argument that the mother was domiciled at Shelter Plus.

Viewing residence as physical presence plus an intent to remain also generates predictability and avoids arbitrariness. A child's physical presence in a district for a very short time before placement in foster care would otherwise obligate that district to cover the costs of education for the months or years the child remains in foster care. Moreover, this outcome avoids penalizing communities that are hospitable to homeless shelters. If, for purposes of Education Law § 3202 (4) (a), "residence" would result from a brief stay at a shelter, communities that offer shelters would have to bear the cost of educating nondomiciliary children with whom they had no other ties.

Accordingly, the order of the Appellate Division should be reversed, with costs, and the order of Supreme Court reinstated.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, GRAFFEO and READ concur; Judge R.S. SMITH taking no part.

Order reversed, etc.