## State of New York
## Supreme Court, Appellate Division
## Third Judicial Department

Decided and Entered: December 8, 2016                     523025
_____

In the Matter of THE ALBANY
    ACADEMIES et al.,
                      Appellants,

        v
                                          MEMORANDUM AND ORDER

NEW YORK STATE PUBLIC HIGH
    SCHOOL ATHLETIC ASSOCIATION,
                      Respondent.
_____

Calendar Date:  October 11, 2016

Before:  Peters, P.J., Lynch, Devine, Clark and Aarons, JJ.

                    _____


        Featherstonhaugh, Wiley & Clyne, LLP, Albany (Jonathan S.
McCardle of counsel), for appellants.

        Renee L. James, Jamesville, for respondent.

                    _____


Peters, P.J.

        Appeal from a judgment of the Supreme Court (Melkonian,
J.), entered June 19, 2015 in Albany County, which dismissed
petitioners' application, in a proceeding pursuant to CPLR
article 78, challenging respondent's Bylaw and Eligibility
Standard Rule 29 and subsequent modifications thereof.

        Respondent is a not-for-profit corporation organized under
the aegis of the Commissioner of Education (see 8 NYCRR part 135)
to provide a central association through which secondary schools
may operate and coordinate their interscholastic athletic
programs.  Petitioners — various charter and private high schools
in New York — are voluntary member schools of respondent who, in
exchange for their membership, have agreed to be bound by the

rules and regulations adopted by respondent.  One such rule, Bylaw and Eligibility Standard Rule 29, known as the transfer rule, provides that a student who transfers without a corresponding change in residence of his or her parents (or other persons with whom the student has resided for at least six months) is ineligible to participate in any interscholastic athletic contest in a particular sport for one year if, as a ninth through twelfth grade student, such student participated in that sport during the one-year period immediately preceding the transfer.  Such rule allows a one-time transfer to the public school district of the residence of the student's parents or to a private school within that district's boundaries while maintaining eligibility to participate in interscholastic sports immediately.

There are six enumerated exceptions to the transfer rule, empowering respondent to waive the otherwise mandatory period of ineligibility under the following circumstances:

"1.  The student reaches the age of majority and [has] established residency in a district and can substantiate that [he/she is] independent and self-supporting.
2.  If a private or parochial school ceases to operate a student may transfer to another private or parochial school of his/her choice.  Otherwise, a student must enroll in the public school district of his/her parents' residency.
3.  A student who is a ward of the court or state and is placed in a district by court order.  Guardianship does not fulfill this requirement.
4.  A student from divorced or separated parents who moves into a new school district with one of the aforementioned parents.  Such a transfer is allowed once every six months. . . .
5.  A student who is declared homeless by the superintendent pursuant to

> Commissioner [of Education]'s Regulation
> 100.21.
>      6.  A student of a military employee
> who is transferred to an active military
> base may enroll in the non-public school
> closest to [his/her] residence and
> maintain eligibility if the student
> enrolls in a non-public school immediately
> following the change in residence."

The transfer rule also provides that any member school may petition on behalf of a student for an approval of a transfer without penalty based upon an "undue hardship" for the student. Respondent has adopted guidelines setting forth the circumstances that warrant a waiver of the transfer rule and criteria to be used in evaluating the undue hardship waivers. The guidelines list three general categories of undue hardship, namely, (1) financial, (2) health and safety, and (3) educational.

In October 2014, respondent's executive committee voted to modify three aspects of the transfer rule and the corresponding guidelines. The first revision eliminated one of the three general categories of undue hardship, known as the "educational waiver," from the transfer rule guidelines. The educational waiver previously allowed a student to transfer without sitting out a year of athletics if the school he or she transferred to offered three classes not offered at the prior school. Thus, beginning with the 2015-2016 school year, students who transferred schools without a corresponding change of address could not obtain a waiver of the transfer rule on the basis of educational undue hardship. The second revision modified the fourth enumerated exception to the transfer rule by requiring that parents be "legally separated," as opposed to simply "separated," in order to qualify for the exception. The third revision added language to the transfer rule itself providing that, "[f]or athletic eligibility[,] a residency is changed when one is abandoned by the immediate family and another residency established through action and intent. Residency requires one's physical presence as an inhabitant and the intent to remain indefinitely."

On February 23, 2015, petitioners commenced this CPLR article 78 proceeding to annul the transfer rule and/or the subsequent modifications thereto on the ground that they are arbitrary and capricious. Finding a rational basis for each of the challenged actions, Supreme Court rejected petitioners' claims and dismissed the petition. This appeal ensued.

We note at the outset that, in its answer to the petition, respondent raised the defense of statute of limitations in response to petitioners' challenge to the transfer rule itself, which was promulgated more than two decades ago. Although respondent was entitled to raise that issue on appeal as an alternative ground for affirmance (see generally Parochial Bus Sys. v Board of Educ. of City of N.Y., 60 NY2d 539, 545-546 [1983]), it has not done so. We therefore deem that issue to be abandoned (see Huen N.Y., Inc. v Board of Educ. Clinton Cent. School Dist., 67 AD3d 1337, 1337-1338 [2009]; Measom v Greenwich & Perry St. Hous. Corp., 42 AD3d 366, 366 [2007], lvs dismissed 9 NY3d 946, 986 [2007]; Ciesinski v Town of Aurora, 202 AD2d 984, 984 [1994]).

Addressing the merits, it is settled that "courts should not interfere with the internal affairs, proceedings, rules and orders of a high school athletic association unless there is evidence of acts which are arbitrary, capricious or an abuse of discretion" (Matter of Gerard v Section III of N.Y. State Pub. High School Athletic Assn., 210 AD2d 938, 939-940 [1994] [internal quotation marks and citation omitted]; accord Suburban Scholastic Council v Section 2 of N.Y. State Pub. High School Athletic Assn., Inc., 23 AD3d 728, 730 [2005]; Section VI of N.Y. State Pub. High School Athletic Assn. v New York State Pub. High School Athletic Assn., 134 AD2d 819, 820 [1987], lv denied 72 NY2d 801 [1988]; see 6 Am Jur 2d Associations and Clubs § 27; see also Matter of Eastern N.Y. Youth Soccer Assn. v New York State Pub. High Sch. Ath. Assn., 67 NY2d 665, 667 [1986]). Such "determination rests on whether the athletic association's actions have a sound basis in reason and a foundation in fact" (Suburban Scholastic Council v Section 2 of N.Y. State Pub. High School Athletic Assn., Inc., 23 AD3d at 730 [internal quotation marks and citation omitted]; see Matter of Pena v New York State Pub. High School Athletic Assn., Inc., 118 AD3d 1456, 1457

[2014]; <u>see generally</u> <u>Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County</u>, 34 NY2d 222, 231 [1974]).

We find that petitioners have failed to demonstrate that the actions taken by respondent warrant our interference. The purpose of the transfer rule, which was promulgated by respondent pursuant to its constitution and by authority delegated to it through the regulations of the Commissioner of Education (<u>see</u> <u>Matter of Brooks v Section V of N.Y. State Pub. High School Athletic Assn.</u>, 300 AD2d 1094, 1095 [2002]), is to deter athletic school-shopping and the recruitment of high school athletes by schools. By establishing an objective standard for eligibility that prohibits, with certain limited exceptions, immediate eligibility upon a transfer not accompanied by a parental change of residence, the transfer rule reasonably and rationally furthers these legitimate goals. Indeed, "[t]he absence of such a rule might reasonably invite strategically motivated transfers thinly disguised as transfers in the best (nonathletic) interest of the student" (<u>Indiana High Sch. Athletic Assn., Inc. v Carlberg</u>, 694 NE2d 222, 233 [Ind Sup Ct 1997] [internal quotation marks and citations omitted]). While the transfer rule may, at times, encompass students who change schools neither primarily for athletic reasons nor as a result of recruitment, respondent has reasonably determined that conducting a factual inquiry into the motivation for each and every transfer would not be feasible given its limited resources and the volume of transfers that would have to be examined. Further, respondent has balanced these competing interests by creating the six enumerated exceptions to the transfer rule and providing for immediate eligibility upon demonstration of an undue hardship. Inasmuch as the transfer rule is reasonable and accomplishes the legitimate purpose for which it was promulgated, it is not within our province to assess the merits of such a rule or the wisdom of its adoption.[1]

---

[1] Notably, transfer rules similar to the one at issue here have been enacted by high school athletic associations in several states and have repeatedly been upheld as rational (<u>see e.g.</u> <u>Parker v Ariz. Interscholastic Assn.</u>, 204 Ariz 42 [2002]; <u>Indiana</u>

Nor are we persuaded that the October 2014 modifications to the transfer rule lack a rational basis or are otherwise arbitrary or capricious. With regard to its decision to eliminate the educational waiver from its guidelines, respondent's submissions establish that member schools had raised serious concerns regarding the use of such waivers and whether academic advantage constituted an "undue hardship" within the meaning of the rule itself. After reviewing the guidelines over the course of several years and collecting data concerning the number and types of undue hardships granted, respondent determined that the educational undue hardship waiver had been misused to circumvent the transfer rule and that its elimination was the best means to discourage recruitment and athletic shopping by students and parents. We cannot say that respondent's decision in that regard was irrational. Likewise, respondent's modification to the fourth enumerated exception to the transfer rule — requiring parents to be "legally separated" in order to qualify for the exception — was a rational response to concerns that parents were strategically circumventing the transfer rule by procuring a second residence and living separately for a period of time with no intention of divorcing.[2] Finally, respondent did not act arbitrarily or capriciously in

---

High Sch. Athletic Assn., Inc. v Carlberg, 694 NE2d at 233; Alabama High Sch. Athletic Assn. v Scaffidi, 564 So 2d 910 [1990]; Ulliman v Ohio High Sch. Athletic Assn., 184 Ohio App 3d 52 [2009]; Morgan v Oklahoma Secondary Sch. Activities Assn., 2009 OK 21 [2009]; Hebert v Ventetuolo, 480 A2d 403 [RI Sup Ct 1984]; Kentucky High School Athletic Assn. v Hopkins County Bd. of Educ., 552 SW2d 685 [Ky Sup Ct 1977]; Chabert v Louisiana High School Athletic Assn. & Vandebilt Catholic High Sch., 323 So 2d 774 [Lo Sup Ct 1975]; Crandall v North Dakota High Sch. Activities Assn., 261 NW2d 921 [ND Sup Ct 1978]; State ex rel. Missouri State High Sch. Activities Assn. v Romines, 37 SW3d 421 [Mo Ct of Appeals, Eastern Dist 2001]).

[2] In modifying this exception, respondent's executive committee expressly noted the undue hardship waiver could be used to grant eligibility in cases where parents could not afford a legal separation.

requiring parents to demonstrate an intent to remain indefinitely in their new home in order for the relocation to constitute a "change in residence" under the transfer rule.  This modification, like that made to the fourth enumerated exception, was meant to address efforts to evade the transfer rule, as well as to bring the meaning of the term residency in line with the Department of Education and Court of Appeals' interpretation of that term (see Longwood Cent. School Dist. v Springs Union Free School Dist., 1 NY3d 385, 388-390 [2004]; Appeal of Lin, 48 Ed Dept Rep 190 [Decision No. 15,827] [2008]; Appeal of Haldane Cent. School Dist., 32 Ed Dept Rep 156 [Decision No. 12,790] [1992]).

Lynch, Devine, Clark and Aarons, JJ., concur.

ORDERED that the judgment is affirmed, with costs.

ENTER:

Robert D. Mayberger
Clerk of the Court