**Scot HOLLENBECK, Plaintiff,**

v.

**BOARD OF EDUCATION OF ROCHELLE TOWNSHIP, Rochelle Township School District, William Charis and Ted Sanders State Superintendent of Education of the Illinois State Board of Education, Defendants.**

**No. 88 C 20054.**

United States District Court, N.D. Illinois, W.D.

June 8, 1988.

Michael H. Brohman, Terri L. Mascherin, Jenner & Block, Chicago, Ill., Sharon R. Rudy, Marconi & Rudy, Rockford, Ill., for plaintiff.

Everett E. Nicholas, Jr., Leo J. Athas, Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., Chicago, Ill., for Bd. of Educ. of Rochelle Tp. and Rochelle Tp. School Dist.

Mary Ellen Coghlan, Atty. General's Office, Chicago, Ill., for William Charis and Illinois State Bd. of Educ.

James O. Nolan, David A. Belofsky, Clausen, Miller, Gorman, Caffrey & Witous, Chicago, Ill., for defendants.

## ORDER

ROSZKOWSKI, District Judge.

This action comes before the court on the plaintiff's appeal from the second Level I hearing officer's order. For the reasons stated below, the court strikes Officer Bergana's decision and finds that the MDC II conference and case study evaluation are not in compliance with EHA requirements and the Level I hearing officer's order and thus in violation of Section 1983. Additionally, the court dismisses Ted Sanders as a defendant. These findings, however, most likely do not entirely resolve the issues in the instant case; therefore, the court requests the parties to appear for a status hearing.

## BACKGROUND

This case springs out of rather unique circumstances that have, in turn, given rise to extraordinary procedures. The present procedural posture of the case and today's decision can be better understood after an exposition on past events.

The plaintiff, Scot Hollenbeck, wanted to compete with and against able-bodied athletes on an equal basis in the sport of track and field. With the help of his father, Dr. Gary Hollenbeck, Scot requested the Rochelle Township School District ("District") and the Board of Education of Rochelle Township ("Board") to allow him to compete on an equal basis or at the very least provide Scot a stipend to help him locate and compete with other wheelchair track athletes. The Board and District informed

the Hollenbecks that no such declaration was forthcoming. Subsequently, the Hollenbecks requested, pursuant to the Education of the Handicapped Act ("EHA"), 20 U.S.C. § 1400 et seq., an impartial due process hearing also known as a Level I hearing. The reason given for the hearing was that Scot's special education services were insufficient to meet his needs. The hearing officer issued an order that concluded, among other things, that Scot must be allowed to compete on teams that are not separate, but when safety warrants it, Scot may participate in a separate wheelchair division. The hearing officer also held that the District is under no obligation to provide any additional stipend, funding, services, or assistance to Scot beyond that service which is offered to non-handicapped students and their parents. The hearing officer further held that Scot's rights had been denied in the area of notification and due process. Finally, the hearing officer issued orders, among them the following:

(1) The school district shall establish a wheelchair division for any sport offered to non-handicapped students at Rochelle Township.

 * * * * * *

(3) ... [I]n accordance with 23 Ill.Adm. Code 226.515 and 226.535(B), the School District shall perform a case study evaluation, which shall describe results of medical and physical therapy evaluations performed since 1984. Also, the June 9, 1986 IEP shall have appended to it, at the next regular IEP meeting, a description of the extent to which Scot participates in the 1986–87 school year.

(4) The [D]istrict shall submit proof of compliance with these orders to the Program Monitoring/Development Section of the Illinois State Board of Education.

Neither party appealed this decision, thus the decision was a final binding decision. See 20 U.S.C. § 1415(e)(1). Mr. Bill Charis ("Charis") was placed in charge of monitoring compliance of the Level I hearing officer's order.

In response to the Level I hearing officer's order, a conference ("MDC I") was held on March 10, 1987, a second conference ("MDC II") was held on April 8th, 9th and 24th to decide whether Scot could safely participate with able-bodied competitors in various athletic endeavors. The conferees decided that Scot may participate alongside able-bodied athletes only in the sports of golf and tennis and no other sports, including track. Additionally, the conferees decided that only track should have a wheelchair division. Mr. Charis, in a May 5, 1987, letter to Dr. Hollenbeck, stated that the District and the Board were in compliance with the Level I order.

The Hollenbecks subsequently filed a 42 U.S.C. § 1983 lawsuit in this court. The plaintiffs alleged a deprivation of due process and equal protection stemming from the defendants' failure to comply with the hearing officer's order. The plaintiffs then moved for a preliminary injunction requesting, among several alternatives, that Scot be placed on an equal footing with other track competitors. The defendants countered with a motion to dismiss the complaint which argued in the main that the plaintiff failed to exhaust his administrative remedies as required in § 1415(f) of the EHA. 20 U.S.C. § 1415(f).

In deciding the defendant's motion, this court found essentially two things. First, the plaintiff, for purposes of their particular cause of action, had exhausted his administrative remedies since, ironically, there really is no administrative mechanism to enforce compliance with a hearing officer's order. See, Digre v. Roseville Schools, 841 F.2d 245, 248–250 (8th Cir. 1988); Robinson v. Penderhughes, 810 F.2d 1270, 1272–75 (4th Cir.1987); Mrs. W. v. Tirozzi, 832 F.2d 748, 756–57 (2nd Cir. 1987); Manecke v. School Bd. of Pinellos, 762 F.2d 912, 912–921 (11th Cir.1985); Quackenbush v. Johnson City School Dist., 716 F.2d 141, 146–149 (2d Cir.1983).

Second, because of this dearth in the administrative procedure, and the court's reluctance to jump directly into the administrative fray, the court struck an accommodation between the judicial and adminis-

trative processes. The court retained jurisdiction over the case but rather than hearing the case the court sent the substance of the plaintiff's action back to be decided by a Level I hearing officer. While realizing that the EHA and its corresponding regulations have not provided for a hearing of this type *per se,* the court held that the efficiency of an administrative hearing and the expertise of a hearing officer on matters regarding EHA procedure and compliance were important enough to prompt this accommodation.

Pursuant to the court's order, an impartial due process hearing was convened on April 13, 1988, for the express purpose of resolving the substance of the plaintiff's complaints. After the hearing, the hearing officer issued his decision finding the defendants in compliance. Presently, the plaintiffs reurge the court through their "appeal" and corresponding memorandum to find the defendants in noncompliance with the original hearing officer's order and grant the relief requested in their amended complaint and preliminary injunction motion. Additionally, the plaintiff questions the impartiality of the second hearing officer.

Recusal of Hearing Officer Bergana

██ The plaintiff objects to the participation of Hearing Officer Bergana in the Second Level I hearing. As the court noted in its earlier order, this hearing was to be held in accordance with the procedures set out in the administrative code. Part of this code requires the hearing to be an "impartial due process hearing." 20 U.S.C. § 1415(b)(2). In particular, "it shall be the responsibility of each prospective hearing officer to ascertain whether he/she should be excluded because of other factors which could affect his/her impartiality, such as the individual's prior involvement with diagnosis, education or care of the student, or a personal interest which could affect his/her objectivity." 23 Ill.Adm.Code § 226.622(c) (1985). "A hearing may not be conducted by a person having a personal or professional interest which would conflict with his or her objectivity in the hearing." 34 C.F.R. § 300.507 (1987).

The plaintiffs contend that two separate communications prior to the hearing between Hearing Officer Bergana and Mr. Thomas Lynch, a defense witness at the April 13, 1988, hearing, have compromised the hearing officer's impartiality. The topic of at least part of these conversations concerned the Hollenbeck hearing and even went so far as discussing a specific issue (the existence and adequacy of a case study evaluation). The existence and content of these conversations was readily admitted by Mr. Lynch at the April 13, 1988, hearing. (April 13, 1988, hearing transcript pp. 413–420).

After reviewing the relevant parts of the transcript and counsels' letters and briefs, this court regrettably must find that the impartiality of the due process hearing has been tainted by these conversations. The court finds that Mr. Bergana, after he was notified of his hearing officer's appointment, should have refrained from discussing with Mr. Lynch the subject of the Hollenbeck compliance process. Undoubtedly, Mr. Bergana's conversations are factors which could affect his impartiality. Thus, the court, pursuant to its jurisdiction over the hearing, has no choice but to strike Mr. Bergana's decision.

With regard to the testimony and exhibits proffered at the April 13, 1988, hearing, the court will not disregard them. After reviewing the transcripts, the hearing officer exerted very little influence on the entry or form of the testimony or exhibits. Therefore, they will be available for use by the court.

Scope of Inquiry

██ At this juncture it is important to clarify the exact scope of the court's inquiry. Neither side would quarrel with the following statement: the court's inquiry is to determine whether the defendants have complied with the original hearing officer's order. The arguments start on what that exactly means. The original hearing officer's order was conditional. Scot can participate on the track team if it is safe. The defendants eventually concluded it was not safe, so the final result is that Scot could not participate on an equal basis. Does

this court now decide if it was truly safe or unsafe for Scot to participate or just whether the process used to determine safety was adequate. The plaintiff in his complaint asks the court to decide both. This the court declines to do. This court is not interested in the results of the administrative process, only the process itself.

While a void in the administrative process allowed this court to consider the plaintiff's Section 1983 action, paradoxically, it is this same administrative process that limits our decision. If the court inquired into the safety determination, it would be judging the wisdom of the final Level I result without first letting the Level II hearing officer review the wisdom of the decision. The court would be bypassing a Level that was placed in the administrative process for the express purpose of reviewing the wisdom of Level I decisions. *See,* 20 U.S.C. § 1415(e). To disregard this part of the administrative process of the EHA because one part (enforcement of a final decision) has proved inadequate would be improper. The court cannot ignore the comprehensive scheme of the EHA, when substantive issues are involved.

Furthermore, to inquire into the result of the original Level I decision would essentially transform the plaintiff's cause of action from a Section 1983 "due process" action into an "EHA" action; a statutory cause of action that can only be instituted after both levels have ruled on the issues. *See* 20 U.S.C. § 1415(e). The court can only decide what it is given. The safety issue must travel a longer path as ordained in the EHA and its regulations in order to be reviewed by the district court. The court, however, can presently rule on whether the defendants granted Scot the compliance process he is entitled under the Constitution, the EHA, and the hearing officer's order.

Framework of the Decision

Although the plaintiff brings a section 1983 lawsuit, the suit in essence is a direct appeal to the District Court from the EHA's administrative process. Unlike an appeal, however, this court has no distinct factual record of the proceedings in question. Thus, the court is forced to make a record from exhibits and testimony. The court originally attempted to ameliorate this lack of a record when it referred the case to the second Level I hearing officer (Mr. Bergana). Unfortunately, for the reasons outlined above, this decision is of no use. The transcript and exhibits, however, are helpful to the court in resolving the plaintiff's claims.

Using the decision of the original Level I hearing officer, the transcript of the April 13, 1988 hearing, the pleadings and the exhibits, the court will address the issues presented in this "appeal" in the same fashion as it would a cross motion for summary judgment.

In this "order", the court will only attempt to determine if the "compliance procedures" comported with the hearing officer's decision. In particular, whether in accordance with EHA requirements[1] and the hearing officer's decision the compliance procedures were adequate to determine if Scot's equal participation was safe and whether an adequate case study was accomplished; and if necessary whether the wheelchair division was adequate. In addition, the court will entertain various other arguments set out by both parties.

## DISCUSSION

To prevail on a motion for summary judgment, a party must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

Due Process and Equal Protection

 As a preliminary matter, the court would like to focus the inquiry further.

---

1. For our purposes, EHA requirements involve the following statutes and regulations: 20 U.S.C. § 1400 *et seq.;* 34 C.F.R. § 300.000 *et seq.* (1987). Ill.Rev.Stat., Ch. 122, § 14–8.02 (West Supp.1988), 23 Ill.Adm. § 226.505 *et seq.* (1985).

The plaintiff, in his amended complaint, brings a section 1983 action raising the issues of due process and equal protection. After a fair reading of the complaint, however, the Constitutional violations are merely after thoughts to the true cause of action. The plaintiff charges the defendants with violating the procedural provisions of the EHA by failing to accurately enforce a Level I hearing officer's order. The constitutional claims are merely conclusory assertions artificially attached to the gravamen of the complaint. *See S–1 v. Spangler,* 650 F.Supp. 1427, 1434 (M.D.N. C.1986); *Victoria L. v. District School Board,* 741 F.2d 369, 372 (11th Cir.1984).

The plaintiff fails to allege the traditional due process deprivations of lack of notice and opportunity to be heard, rather, only the violations of the EHA are dwelled on with only isolated references to due process and equal protection.

In fact, the plaintiff, in his response to the defendant's motion to dismiss, conceded that he was operating under a violation of a federal statute theory and not a separate due process or equal protection theory. (Plaintiff's Memo in Response to Rochelle Township Defendant's Motion to Dismiss at pp. 6–7). Thus, the court will limit its examination to compliance with the EHA and the hearing officer's order.

Ted Sanders

■■■■■ The defendant Ted Sanders moves the court to dismiss him from this Section 1983 lawsuit because Mr. Sanders is merely a supervisory official and the plaintiff has failed to allege his direct personal responsibility for any EHA violations. *See Monell v. Depart. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). The amended complaint recites Sanders' failure to enforce the hearing officer's order but fails to elaborate on Sanders' role. Moreover, the extensive testimony and exhibits so far elicited in this case have made no mention of Mr. Sanders whatsoever in relation to EHA violations. The court will not entertain a Section 1983 claim based on the doctrine of respondeat superior; therefore, Mr. Sanders is hereby dismissed from the case at bar.

Delegation and Appropriateness of an MDC

The procedures of the EHA are somewhat involved and complex since the federal statute is implemented through federal regulations and state statutes and regulations. One area of particular importance is the original placement of a handicapped student. This placement requires a student to go through a case study evaluation, at least one multidisciplinary conference and the development of an IEP. *See,* 23 Ill.Adm.Code Subpart I (1985).

Although, Scot Hollenbeck had been placed in the special education system for three years, he had never been the subject of a case study evaluation. (Level I Hearing Officer Order at p. 4). The original Level I hearing officer attuned to this missing link in the procedural chain, ordered such an evaluation. (Order at p. 5) In addition, the hearing officer, acknowledging his lack of training and expertise, deferred the resolution of whether Scot could safely compete in track against able-bodied athletes to be decided by the administrative mechanism of the EHA. (Order at p. 3)

The plaintiff argues that the delegation of the safety issue from the impartial hearing officer to partial public agencies was unauthorized under the EHA. The court finds this delegation argument untimely since the plaintiff attempts to attack the hearing officer's delegation but not the hearing officer's original decision. Yet, the delegation of decisionmaking power is part of the hearing officer's original decision, and neither party appealed this original order.

The hearing officer reasonably decided that he was unqualified to fully resolve the plaintiff's dispute; thus, he "delegated" certain duties to the administrative process. If the plaintiff felt that such a delegation was in violation of the EHA, then the plaintiff could have appealed the hearing officer's decision to a Level II hearing instead

of hedging and waiting for the results of the delegation to materialize.

The plaintiff cites several cases in support of his delegation theory all of which can be distinguished from the instant case. The plaintiff's authorities deal with an attempt to substitute another procedure for a requested impartial due process hearing. *See Patsel v. District of Columbia Board of Education,* 522 F.Supp. 535 (D.D.C. 1981); *Helms v. McDaniel,* 657 F.2d 800 (5th Cir.1981), *cert. denied,* 455 U.S. 946, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1981). *S–1 v. Turlington,* 635 F.2d 342 (5th Cir.1981), *cert. denied,* 454 U.S. 1030, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981).

In the instant case, a due process hearing was convened and a decision was rendered. The delegation was merely a part of the impartial hearing officer's decision. Unlike the plaintiff's cited authority, the disputed procedures did not substitute for the impartial due process hearing decision, rather, they flowed from the impartial due process hearing. *See* Level I Hearing Officer's Order.

 The plaintiff also questions the appropriateness of using a MDC to determine the safety of Scot's desired participation in track. The hearing officer, as part of his decision, ordered a case study evaluation and an amendment to Scot's placement reflecting the amount of his participation. (Order at p. 5). Furthermore, the hearing officer found that Scot should participate on an equal basis in track, unless safety considerations would not allow it. (Order at p. 3). Admittedly, the hearing officer did not explicitly order a multidisciplinary conference, yet, this conference is contemplated in the statute as the bridge between a case study evaluation and an IEP formulation. *See* 23 Ill.Adm.Code Subpart I.

The process of identifying, evaluating, and placing a handicapped child is sometimes more in the nature of a continuum than distinct and separate stages. Some procedures may flow into the next and it is sometimes difficult to stratify the process into individual components. Further, the rules and regulations governing EHA procedures makes clear that placement cannot take place unless a student has been identified and evaluated. Subpart I. An integral part of this evaluation procedure is the interpretation of data by a multidisciplinary conference and their formulation of an IEP. 23 Ill.Adm.Code §§ 226.550, 226.560. Thus, the MDC is not only an appropriate procedure but a necessary procedure in terms of amending Scot's placement.

Moreover, these conferences are normally used in placing a handicapped child among his or her able-bodied peers. Safety determinations are often made at an MDC as are the myriad of other determinations needed to place a handicapped student. *See* 34 C.F.R. §§ 300.513 of comment, 300.-552.

The use of an MDC, however, is not without its problems. The plaintiff is rightfully concerned with the original hearing officer's deference to the administrative process, since the parties who participated in the evaluation and placement of Scot also happen to have opposed his equal participation in the first place. Additionally, the MDC is primarily geared for academic placement. As evidenced in the regulations, participants of a MDC and evaluation data are primarily academically based. *See* §§ 226.535, 226.550, 226.560. Thus, the MDC is not ideally suited for determining safety in athletic pursuits. This type of procedure, however unwieldly, was chosen to determine safety and if tailored to the task at hand is as appropriate as any procedure.

Compliance with EHA Procedures

 The EHA requires three basic procedures to be accomplished when placing a handicapped child. First, the student must be identified, second, evaluated, and third, placed. Subpart I. While these three procedures by their nature lend themselves to be commingled with each other, the regulations themselves do not recognize such commingling and mandate certain requirements to be met at each of three basic stages. These requirements must be met in order for these procedures to be meaningful and produce the desired result of a proper placement of the child.

The Hollenbecks contend that Scot was not properly evaluated or placed by the defendants because the requirements found in the EHA and its corresponding rules and regulations were not met.

Specifically, the plaintiff avers that the MDC participants lacked the requisite training and knowledge to make the safety determination. Further, these plaintiffs failed to seek relevant outside opinion. These same officials also refused to allow the plaintiff and Dr. Hollenbeck to present outside evidence. Finally, the case study failed to include a medical exam. The defendants contend that MDC participants were qualified and that the MDC need not seek outside evidence and that the plaintiff was afforded an opportunity to bring outside evidence into the MDC, and a medical exam was irrelevant.

Participants

A cursory look at the list of participants of Scot's placement procedure would not provide a clue as to their inadequacy. As mandated in 23 Ill.Adm.Code, §§ 226.-550(a)(1) and § 226.550(b), Ogle County Special Education Cooperative representative (Thomas Lynch) was present as was Scot's counselor (Laurie Pillen), Scot's father (Dr. Hollenbeck), Scot himself, and in addition a sociologist (Brian Krajewski), Rochelle Township special education representative (Bruce Anderson), Scot's physical therapist (Helen Wales), a nurse (Pauline Olson), Rochelle Township High School ("R.T.H.S.") principal (Mr. Roderick), and R.T.H.S. athletic director (Bruce Vickrey) and a psychologist (Bill Jansen). By their disciplinary titles, it would seem that the defendants have fulfilled the EHA requirements on MDC participants. The issue before the MDC, however, was not a typical academic or residential placement. Rather, the issue was whether it was safe for Scot to compete against able-bodied athletes in track. Put in this light, it can readily be seen that the MDC participants did not meet EHA requirements mandating that the placement decision is to be "made by a group of persons ... including persons knowledgeable about the child, the meaning of the evaluation data, and the place-

ment options." 34 C.F.R. § 300.353(3) (1987). Further, "no child shall be eligible for special education facilities except with a case study fully reviewed by professional personnel in a multidisciplinary staff conferences and only upon the recommendation of qualified specialists ...". Ill.Rev. Stat., ch. 122, § 14–8.02 (West. Supp.1987). *See also* 34 C.F.R. § 300.532(e) (1987) (This section involves a case study, but serves as further indication of the need for MDC participants specializing in the disability or, in this case, safety determination at bar).

Some of the participants placing Scot were familiar with Scot but were inexperienced with athletics in general, and handicapped athletics in particular. For example, Laura Pillen, Scot's counselor, Bill Jansen, psychologist, Mr. Roderick, R.T.H.S. principal, and Brian Krajewski, sociologist, were somewhat familiar with Scot but none had any significant knowledge or experience with athletics in general and track or wheelchair track in particular. In addition, the participants were not well versed in Scot's physical abilities or disabilities. (Tr. at pp. 250–262).

Other participants such as Helen Wales, Scot's physical therapist and Polly Olsen, a nurse, were familiar with Scot's physical condition but had little if no experience with athletics and no experience with wheelchair athletics or track. (Tr. at pp. 259–261)

Still other participants, including Thomas Lynch the chairman of the MDC, and Bruce Anderson, R.T.H.S.'s special education representative, were knowledgeable in the placement of handicapped students but neither claimed to have any extensive experience in wheelchair athletics or with Scot's physical abilities and disabilities. (Tr. at 259–60, 429–432).

In fact on various occasions during the conference several participants questioned their own competence to decide the safety issue. (Tr. at pp. 260, 264–65, 306, 324, 337, 393–94, 397–99, 477).

A multidisciplinary conference denotes an eclectic combining of various disciplines in order to bring to bare the groups' expertise on the peculiar problem of placing a

handicapped child. None of the MDC participants were knowledgeable about the evaluation data involving wheelchair athletics and the degree of safety involved or the placement options of wheelchair divisions or mixing able-bodied athletes with handicapped athletes. None of these participants fully understood the dynamics of track and field events let alone wheelchair track. Yet, these essentially lay people were expected to decide if Scot's participation in able-bodied track was safe.

The participants, while from diverse disciplines, failed to have the requisite knowledge of wheelchair athletics to determine if it was safe for Scot to participate with able-bodied athletes in track and field. Indeed, the only participants thoroughly familiar with the issue were Dr. Hollenbeck and Scot Hollenbeck. (Tr. at pp. 444–45) Bruce Vickery, the athletic director, and Bruce Anderson, the R.T.H.S. girls' track coach were somewhat involved with track but have little experience with wheelchair athletics or Scot's participation in them. (Tr. at pp. 439–40).

The court finds that the conference was simply not constituted of participants with the requisite knowledge of Scot's abilities in wheelchair athletics and wheelchair track or of Scot's participation in track with able-bodied athletes. In short, the MDC participants, particularly the public agency contingent, were not sufficiently familiar with Scot's evaluation data and placement options regarding the safety or lack thereof of Scot participating in track on an equal basis.

Information at the MDC II

■ The plaintiff next argues that the participants of the MDC failed to seek outside information and that the Hollenbecks were denied an opportunity to present testimony. The EHA does not, as a rule, require an MDC to seek outside information but does require certain information to be considered by an MDC, for example, evaluation data. § 226.555(b). Importantly, the regulations require the MDC to draw upon information from a variety of sources to insure that more than one source is used in making placement decisions. 34 C.F.R.

§ 300.533(1) (1987). In addition, the EHA openendly invites the MDC to include "other persons having significant information regarding the child." § 226.550(a)(1) (1985).

While the MDC may not have to seek out evidence, individual MDC members have no authority to prohibit the testimony or participation of an individual or individuals having significant information regarding placement of the child. *See* 34 C.F.R. § 300.344(a)(5) (1987), 23 Ill.Adm. § 226.550(a)(1) (1987). Yet, the MDC did just that when Mr. Lynch informed Dr. Hollenbeck that no further testimony would be allowed on the issue of safety at the MDC II since the safety issue had already been decided and no new information could change the participants' minds. (Tr. 267–68, 270, 308–09, 319, 330, 334–35, 338–39, 398–99). The regulations clearly allow at the discretion of parents the presence at the MDC of any knowledgeable person on the issue at bar. 34 C.F.R. § 300.344(a)(5), (b)(2); 23 Ill.Adm.Code § 226.550(a)(1). There is no veto power of one member over another. While parents cannot make the ultimate placement decision, their role in an MDC is on a par with other members. 34 C.F.R. § 300.344(3); 23 Ill.Adm.Code § 226.560(3). Indeed, a consistent theme throughout the statute and regulations is the "active" participation of the exceptional child's parents in the child's identification, evaluation, and placement. 34 C.F.R. § 300.345; *See also* comment. Other members of the MDC have no right to deny a parent from introducing testimony from people with significant information, about the child's proposed placement.

The court finds this violation to be particularly egregious since the testimony of all the witnesses at the April 13, 1988 hearing reflected the paucity of safety information available to the MDC II participants. (Tr. at pp. 265–267, 444, 447–451).

Case Study Evaluation

■ The insufficiency of the case study is plead in the alternative. This court, however, finds that evaluation and placement of a student are inextricably tied to-

gether and thus should be considered in tandem.

The Level I hearing officer in his decision ordered a case study evaluation of Scot Hollenbeck. In particular, "... in accordance with 23 Ill.Admin.Code §§ 226.515 and 226.535(B) the school district shall perform a case study evaluation, which shall describe results of medical and physical therapy evaluations performed since 1984." (Order at p. 5). Undoubtedly, the hearing officer was concerned with Scot's physical condition since he explicitly cited only one of the several mandatory components of a case study; a medical examination. *See* 23 Ill.Adm.Code § 226.535(c)(1)(B) (1985).[2] Yet, no medical examination was performed on Scot as part of his case study examination. (Tr. at pp. 437–38). The defendants' argument that a medical exam was unnecessary since the MDC decided the safety issue primarily on the safety of the able-bodied competitors is irrelevant. The hearing officer's order is clear that a case study should be performed and a medical exam as part of that case study. The order was not complied with in violation of the EHA. Thus, the MDC II was further handicapped by an inadequate case study evaluation. The effect of this breach is magnified by the fact that little other evidence other than the case study was examined by the MDC.

Through extensive procedure, the EHA endeavors to place handicapped children. These procedures stress information and expertise as qualities necessary to place an exceptional child. The MDC II lacked both. Compliance with the Hearing Officer's Order

▪ Beyond the defendants' compliance or lack of it with EHA procedures, this court must also consider whether the hearing officer's decision was complied with as a general matter. The original Level I hearing officer ordered that Scot must be allowed to compete for teams that are not separate, but when safety warrants it, Scot may participate in a separate division. The

hearing officer deferred the safety determination obstensibly because he was not qualified to make such a determination. The hearing officer, however, did not defer anything else. Nowhere does it mention that the "appropriateness" of Scot participating in able-bodied track be analyzed before he is allowed to participate or the safety or appropriateness of wheelchair sports be examined before implementing the hearing officer's decision. Yet, the MDC did both things when deciding whether Scot could participate with able-bodied athletes or in a wheelchair division. Clearly, the MDC was not complying with the Level I order. (Plaintiff's Exhibit # 5).

Moreover, the delegation of the safety determination to the MDC carried with it a responsibility to throughly investigate, analyze, and discuss the issue. This responsibility would probably have been shouldered if EHA procedures were followed; however, the fact persists that the hearing officer's order remains unexecuted if the safety issue is resolved by anything less than an informed and expert decision. As a whole, the court finds that the MDC failed to comply with the hearing officer's order for the same reasons as stated above that the safety issue was decided by an MDC that lacked the qualified personnel and relevant information to pass judgment on Scot's equal participation in track.

Indeed, the original Level I hearing officer could have made a determination on the issue of safety but he deferred the determination. Ironically, the MDC proved no more informed or competent to decide the issue of safety than the original Level I hearing officer.

## CONCLUSION

The court finds as a matter of law that the MDC was inadequate to meet the requirements of the EHA and the hearing officer's decision and, thus, is in violation of 42 U.S.C. § 1983. Additionally, the court dismisses Ted Sanders from the lawsuit. In view of the above, the court does

---

**2.** The Hearing Officer erroneously cites § 226.535(B) in his order. From the context of his order and inspection of the Illinois Administrative Code, the court assumes § 226.535(c)(1)(B) was intended.

not find it necessary to address the issues contained in Count III of the plaintiff's complaint. It is apparent to the court that the question of Scot Hollenbeck's participation in track is now moot. However, this does not entirely resolve all of the issues in the case. Therefore, the court requests the parties appear for a status hearing on June 22, 1988, at 10:30 a.m.