**Michael Ray CROCKER**

v.

**TENNESSEE SECONDARY SCHOOL ATHLETIC ASSOCIATION and Ronald Lee Carter, individually and as Executive Director of the Tennessee Secondary School Athletic Association.**

**The METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY**

v.

**Ray CROCKER and wife, Susan Crocker, as Legal Guardians and Next Friends of Michael Crocker, a Minor; Tennessee Secondary School Athletic Association; and Charles Smith, Commissioner of the Tennessee Department of Education.**

Nos. 3–89–0803, 3–89–0804.

United States District Court,
M.D. Tennessee,
Nashville Division.

April 20, 1990.

See also 873 F.2d 933.

W. Gary Blackburn, Gerald A. Smith, Jr., Blackburn, Little, Smith & Slobey, Nashville, Tenn., for Ray and Susan Crocker.

James L. Charles, Wm. Michael Safley, Elizabeth Kalogeros Webb, Metro Dept. of Law, Nashville, Tenn., for Metro Government of Nashville & Davidson Co.

Charles Hampton White, Richard L. Colbert, Cornelius & Collins, Nashville, Tenn., for Tennessee Secondary School Athletic Ass'n.

Jane Young, Asst. Atty. Gen., Nashville, Tenn., for Charles Smith.

## MEMORANDUM

JOHN T. NIXON, District Judge.

Pending before the Court are plaintiffs' motion for a preliminary injunction and defendants' motion to dismiss.

## FACTS

The plaintiff, Michael Crocker, is a student enrolled in the 12th grade at McGavock High School in Nashville, Davidson County, Tennessee. The defendant, Ten-

nessee Secondary School Athletic Association, is an organization designed to regulate high school athletic activities.

On March 2, 1988, during the middle of the Spring semester, Michael Crocker transferred as a tenth grade student from Ezell–Harding Christian School into McGavock High School, a Metropolitan public school.

Ronald Lee Carter, the Executive Director of the Tennessee Secondary Schools Athletic Association [TSSAA], ruled that Michael Crocker was ineligible to participate in interscholastic football, basketball, baseball, and track for a period of twelve months from his enrollment at McGavock pursuant to TSSAA transfer regulations, Article II, Section 13.

On March 14, 1988, McGavock High School submitted an appeal of Executive Director Carter's eligibility ruling pursuant to the TSSAA hardship rule. On March 15, 1988, Executive Director Carter denied the hardship request. McGavock High School appealed Carter's decision to the TSSAA Board of Control, the administrative authority of the TSSAA, and the Board of Control denied the hardship appeal on March 23, 1988.

On or about May 4, 1988, Michael Crocker was certified by Metropolitan Public Schools, as having a learning disability in the specific area of written language. Michael Crocker was certified "handicapped" pursuant to the Education of the Handicapped Act [EHA], 20 U.S.C. § 1400 *et seq.*.

On August 20, 1988, in light of Michael Crocker's certification as "handicapped," McGavock High School presented a second hardship appeal on behalf of Michael Crocker to the TSSAA Board of Control. On August 22, 1988, the Board of Control denied this second hardship appeal.

After the first four games of the 1988–89 football season, on August 23, 1988, Mr. and Mrs. Crocker filed suit in this Court on behalf of their son, claiming that Michael's ineligibility for participation in interscholastic athletics at McGavock High School deprived him of his rights under the EHA. (*Crocker v. TSSAA, et al.*, No. 3–88–0710). Defendants in the suit were the TSSAA;

Charles Smith, Commissioner of the Tennessee Department of Education; and the Metro Board of Education.

Following an evidentiary hearing on Mr. and Mrs. Crocker's application for a temporary injunction and a trial on the merits, this Court announced its opinion on September 23, 1988. The Court found that although the EHA did not require that the local and state educational agencies affirmatively provide extracurricular activities for handicapped students, it did prohibit discrimination against those students. The Court concluded that a student who transferred from one school to another for the purpose of receiving a free appropriate public education under the EHA could not be prohibited from participating in extracurricular activities since such a prohibition would amount to discrimination based on handicap. The Court found that it was necessary to determine the reason for Michael Crocker's transfer and that the determination must be made by the local educational agency. Pending that determination, this Court declared "that no athletic contest that he [Michael Crocker] participates in is to be determined by TSSAA to be an invalid contest." (September 23, 1988, transcript of *Crocker v. TSSAA, et al.,* No 3–88–0710). Michael Crocker participated in interscholastic football and basketball during the remainder of the 1988–89 school year.

On December 13, 1988, the Sixth Circuit Court of Appeals vacated this Court's decision because the Crockers had failed to exhaust the administrative remedies mandated by the EHA and state procedures. The plaintiffs allege that the Court of Appeals ordered from the bench that: "Metropolitan Public Schools, specifically McGavock High School, was not to be penalized for allowing Michael to participate pursuant to Judge Nixon's Order." The defendant does not deny that such an order was made from the bench. The defendant asserts that it is only aware of what the Court of Appeals says through the Court's written opinion. The defendant contests the binding force of such an order since it

did not appear in the Sixth Circuit Court of Appeals written decision.

On or about August 21, 1989, after this Court's injunction had been dissolved, McGavock High School Principal, Dr. Howard Baltimore, was notified by TSSAA Executive Director Carter that pursuant to a decision by the TSSAA Board of Control, Michael Crocker would be ineligible to participate in interscholastic football and basketball after the fourth football game of the 1989–90 school season. In a second letter dated August 21, 1989, Mr. Carter ordered McGavock High School to forfeit all games in which Michael had participated during the 1988–89 school year, as well as all championships and trophies, which resulted from those games. Dr. Baltimore appealed the directive to forfeit all games, championships and trophies to the TSSAA Board of Control. A letter was sent on August 29, 1989, reflecting the Board of Control's decision to uphold Mr. Carter's directive. As of this date McGavock High School has not forfeited the games, championships, nor the trophies which resulted from those games.

On September 5, 1989, an Individualized Education Program (IEP) was proposed for Michael Crocker as a 12th grade special education student at McGavock High School. The IEP provided for continued participation in the regular education program, allowing McGavock's special education department to monitor Michael's progress and to be available to Michael and his teachers on an "as needed" basis. Michael's parents were in agreement with the proposed educational program, but did not sign the IEP due to Metro's position that football was not a related service to be included in his IEP because it would not help Michael's written language handicap.

On September 5, 1989, the Crockers requested an EHA due process hearing regarding Metro's refusal to write into Michael's IEP that he should participate in interscholastic athletics for the 1989–90 school year. A due process hearing was held on September 29, 1989, by Judge Mulroy, an Administrative Law Judge. On October 13, 1989, Judge Mulroy held that TSSAA had discriminated against Michael, pursuant to 29 U.S.C. § 794, in prohibiting him from participating in interscholastic athletics by failing to grant a special hardship exception to the TSSAA Transfer Rule. The ruling also placed responsibility upon the State of Tennessee to "use its good offices to obtain reversal of the TSSAA decision which voided the public high school's 'win' record for academic year 1988–89 for games in which Michael played." (*In the Matter of Michael Ray Crocker*, Judge Mulroy, No. 89–29, at p.4)

On October 18, 1989, the Metropolitan Public Schools received a letter from the Tennessee Commissioner of Education, Charles Smith, requiring the school system to provide written assurances that the October 13, 1989 administrative decision was being complied with, and that Michael Crocker be allowed to participate in interscholastic sports without interference.

On October 18, 1989, the Metropolitan Government of Nashville and Davidson County [Metro] filed suit in this Court, alleging an action involving the EHA and claiming federal question jurisdiction under 28 U.S.C. § 1331. Metro sought a declaratory judgment declaring the rights and obligations of the parties under Judge Mulroy's decision *In the Matter of Michael Ray Crocker*, No. 89–29. In addition, Metro sought injunctive relief to prevent TSSAA from taking reprisals or retaliation against McGavock High School or Metro for allowing Crocker to participate in interscholastic athletics in accordance with Administrative Judge Mulroy's decision. Finally, Metro sought an injunction preventing TSSAA from requiring McGavock High School to forfeit athletic contests, championships and trophies for games in which Crocker participated at McGavock High School during the 1988–89 school year.

Also on October 18, 1989, Michael Ray Crocker filed his second suit in this Court alleging that TSSAA and Ronald Lee Carter, Executive Director of TSSAA, had deprived Crocker of rights secured to him by the Education of the Handicapped Act, 20 U.S.C. § 1400, *et seq.* and Section 504 of the Rehabilitation Act, 20 U.S.C. § 794 [Re-

habilitation Act], and further alleging that TSSAA and Carter would continue to violate the rights of Crocker under said Acts unless enjoined by this Court. Crocker also sought compensatory damages in the amount of $500,000 and punitive damages in the amount of $1,000,000. Crocker brought his action pursuant to 42 U.S.C. § 1983, claiming federal question jurisdiction under 28 U.S.C. § 1331.

Upon application of Crocker, this Court on October 19, 1989, issued a temporary restraining order in accordance with Rule 65(b) of the Federal Rules of Civil Procedure, restraining Carter and TSSAA from "all acts which might prevent, prohibit or discourage McGavock High School, its coaches or administrative personnel from allowing Michael Ray Crocker full participation in interscholastic athletics, pending further order of this Court." Upon application of Metro, the Court on the same day issued a temporary restraining order restraining TSSAA from imposing sanctions upon McGavock High School, its coaching staff or athletic team members for compliance with Administrative Judge Mulroy's decision, issued October 13, 1989. On October 23, 1989, a hearing was held before this Court to determine whether Crocker's and Metro's applications for preliminary injunctions should be granted.

## DISCUSSION

In ruling upon the appropriateness of preliminary injunctive relief, this Court must consider four factors:

1) Whether the plaintiff has shown a strong likelihood of success on the merits;

2) Whether the plaintiff has shown irreparable harm;

3) Whether the issuance of a preliminary injunction would cause substantial harm to others; and

4) Where the public interest lies.

*USACO Coal Company v. Carbomin Energy Inc.,* 689 F.2d 94, 98 (6th Cir.1982); *Adams v. Federal Express Corporation,* 547 F.2d 319, 323 (6th Cir.1976); *accord, Christian Schmidt Brewing v. G. Heileman Brewing,* 753 F.2d 1354 (6th Cir.1985);

and *Tate v. Frey,* 735 F.2d 986 (6th Cir. 1985).

Plaintiffs are seeking two different forms of preliminary injunctive relief. Plaintiff Metro and plaintiff Crocker both seek an order enjoining the defendant TSSAA from interfering with the implementation of Judge Mulroy's October 13, 1989 order. In addition, plaintiff Metro seeks an order enjoining TSSAA from imposing forfeiture of contests upon McGavock High School for games in which Michael Crocker participated during the 1988–89 school year. Each of these will be considered in turn.

A. Plaintiffs' Motions to Enjoin Defendant From Interfering with the Implementation of Judge Mulroy's Order.

1. *Likelihood of Success on the Merits*

Plaintiff Crocker brought this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in full:

Every person who, under color of any statute, ordinance, regulation custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit or equity, or other proper proceeding for redress.

In order to prevail at trial on a § 1983 claim only two elements must be established by the plaintiff. First, the plaintiff must show that he has been deprived of a right created by federal law or regulation. Second, it must be shown that the person who deprived the plaintiff of that right acted under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980) ("By the plain terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under

color of state or territorial law.") *See also, Monroe v. Pape,* 365 U.S. 167, 171, 81 S.Ct. 473, 475–76, 5 L.Ed.2d 492 (1961).

### a. Deprivation of a Right Created by Federal Law or Regulation

The Education of the Handicapped Act, 20 U.S.C. § 1400, *et seq.,* is a comprehensive statute enacted to assist the states in providing handicapped children with a "free appropriate public education." To accomplish that goal, the EHA provides federal funding to state and local educational agencies to be used for educating handicapped children. 20 U.S.C. § 1411; *See also, Quackenbush v. Johnson City School Dist.,* 716 F.2d 141, 145, *cert. denied,* 465 U.S. 1071, 104 S.Ct. 1426, 79 L.Ed.2d 750 (1984). The EHA makes this federal funding contingent upon the requirement that the states which receive these funds shall not deny a free appropriate public education to handicapped students. 20 U.S.C. § 1412; *Board of Education of Hendrick Hudson Central School Dist. v. Rowley,* 458 U.S. 176, 182, 102 S.Ct. 3034, 3038, 73 L.Ed.2d 690 (1982). To implement these rights, the EHA requires that states shall establish procedures "to assure that handicapped children and their parents or guardians are guaranteed procedural safeguards with respect to the provision of free appropriate public education[.]" 20 U.S.C. § 1415(a). The EHA insures handicapped children and their parents or guardians of many procedural safeguards, including, among others, the entitlement to "an impartial due process hearing" regarding "any matter relating to ... the provision of a free appropriate public education." 20 U.S.C. § 1415(b)(1)(E); 20 U.S.C. § 1415(b)(2).

The plaintiff, unhappy with the decision not to include participation in interscholastic athletics in his IEP, made full use of the safeguards provided in the EHA by requesting a due process hearing.

On September 29, 1989, the due process hearing, conducted by Judge James L. Mulroy, II, resulted in a decision that ordered:

1. That Michael be allowed to participate in interscholastic extracurricular sports on the basis of the special hardship, his handicapping condition, which necessitated his transfer.

2. That this participation be without interference, reprisal, or retaliation from any source.

3. That the State Board of Education take steps to ensure that in cases concerning disputes over the eligibility of handicapped students for extracurricular activities or involving allegations of disparate treatment of handicapped students in participation of such activities, decisions be made by the competent authorities of the office of Special Education compliance or by due process hearing officers, as is already required by the law, and that such decisions not be delegated to outside agencies or private entities.

4. That the State Board of Education use its good offices to obtain reversal of the TSSAA decision which voided the public high school's "win" record for academic year 1988–9 for games in which Michael played. (Notably, this action may already be in violation of the order of the U.S. District Court for the Middle district of Tennessee entered by Judge Nixon in this case.)

*In the Matter of Michael Crocker,* Memorandum Decision and Order of Judge Mulroy at pp.3–4.

There has been no appeal from Judge Mulroy's decision and order. The decision of a state appointed hearing officer is final unless appealed. 20 U.S.C. § 1415(e)(1); Tennessee Board of Education, *Rules, Regulations, and Minimum Standards,* 0520–1–3.09(5)(16); *Helms v. McDaniel,* 657 F.2d 800, 803 (5th Cir.1981), *cert. denied,* 455 U.S. 946, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982); *Robinson v. Pinderhughes,* 810 F.2d 1270, 1272 (4th Cir.1987); *Antkowiak v. Ambach,* 838 F.2d 635, 641 (2d Cir.1988); *Hollenbeck v. Board of Education of Rochelle Township,* 699 F.Supp. 658, 663 (N.D.Ill.1988).

The Court finds that Michael Crocker has a federal right to the education prescribed by the due process hearing which will be

violated if, as alleged, the TSSAA intentionally interferes with Judge Mulroy's order by declaring the plaintiff ineligible, forfeiting the games in which he participated in, or retaliating against the plaintiff or McGavock High School in any way. Accordingly, the Court finds that for the purposes of this preliminary injunction, Michael Crocker has met his burden of demonstrating that the defendant has interfered with the rights guaranteed to Crocker by federal law. Thus, the first half of the *Gomez v. Toledo* test is satisfied.

### b. State Action

This Court concludes that TSSAA is a state actor for two primary reasons. First, the State of Tennessee has delegated to the TSSAA its authority to regulate the eligibility of public high school students to participate in interscholastic athletics. This delegation of authority is evidenced by the Tennessee State Board of Education's adoption and approval of the TSSAA's Official Handbook of Regulations and by the Board of Education's recognition and designation of the TSSAA as the only organization to supervise and regulate athletic activities in which the public junior and senior high schools of Tennessee participate on an interscholastic basis. Tennessee Board of Education, *Rules, Regulations, and Minimum Standard,* 0520–1–2–.26(1). *See also, Crocker v. Tenn. Secondary School Athletic Assoc.,* 873 F.2d 933, 938 (6th Cir. 1989) (Jones, J., concurring) ("Thus, if the TSSAA currently engages in practices which discriminate against handicapped high school athletics, it would seem that a complaining party could state a valid claim against the State and the TSSAA (as the State's agent) under the [EHA] . . .").

Second, the composition of TSSAA's membership demonstrates that it is a state actor, acting "under color of law", for this cause of action. The TSSAA includes among its membership every public high school in the state. TSSAA's rules and regulations are developed by a legislative council composed of nine members, all of whom are principals of member schools of the Association. The administrative authority of TSSAA is vested in a Board of Control, a separate nine member body that is also composed of principals of member schools in the Association. (Defendant's Proposed Findings of Fact and Conclusions of Law, at pp.4–5.) Thus, not only does the State approve of the Rules and Regulation of the TSSAA, but the principals of public schools, state employees, have some direct control over the development and implementation of the TSSAA's rules and regulations.

Thus, because the Court finds that for the purposes of this motion that the TSSAA is a state actor, the last half of the *Gomez v. Toledo* requirement is met.

### 2. *Irreparable Injury*

The plaintiff is a senior in high school. He will only have the opportunity to participate in one or two more high school football games. Due to TSSAA's actions, Michael Crocker has already been forced to sit out many games. There is no adequate remedy at law in this case should the injunction be denied and the plaintiff ultimately prevail. Money damages simply cannot make up for the lost chance to play with one's classmates and experience the thrill and excitement of competitive sports. Money is not an adequate substitute for memories. This Court, therefore, finds that the plaintiff will suffer "irreparable harm" unless an injunction is issued. *Cf. Boston Professional Hockey Ass'n, Inc. v. Cheevers,* 472 F.2d 127 (1st Cir.1972) (Loss by an athletic team of services of star athlete is "irreparable harm.").

### 3. *Substantial Harm to Others*

This Court finds that substantial harm will not result to TSSAA if the preliminary injunction is granted. The injunction will not require the expenditure of any funds by TSSAA, nor will the injunction force the TSSAA to take any action or hold any meetings. The injunction will merely prevent the TSSAA from taking certain actions. The injunction will not substantially diminish the authority of the TSSAA, nor prevent it from supervising and regulating high school athletics within Tennessee. The injunction will merely cause the

TSSAA to abide by federal law. A course of action that TSSAA should have been willing to undertake without judicial intervention.

The only other harm that might result to others would be the effect of the plaintiff's conduct on the field against competitor schools. Because football is a team sport requiring the concerted efforts of twelve individuals, the Court finds that the plaintiff's participation will probably only have a *de minimis* effect on the outcome of any high school athletic contest.

### 4. *Public Interest*

The public interest in this case does not lie in preventing a student, who has been certified as handicapped pursuant to federal law, from playing in a high school football game because an organization disagrees with the implications of that certification. Rather, the public interest lies in reinforcing the respectability of the judicial systems of the United States and Tennessee. This Court has enjoined the TSSAA from retaliating against the plaintiff, the Sixth Circuit Court of Appeals has indicated the same, finally, a Tennessee Administrative Law Judge has ordered the TSSAA not to retaliate against the plaintiff. Yet, the TSSAA has remained in callous defiance of these orders. The public interest lies in enjoining this defiance of the rule of law.

A careful balancing of the above-mentioned factors demonstrates that the factors weigh heavily in favor of granting the preliminary injunction. Therefore, this Court hereby GRANTS the plaintiff's motion for an Order restraining the defendants from interfering in the implementation of Judge Mulroy's decision and Order. This Court ORDERS the defendant TSSAA not to take any action which might prevent, prohibit or discourage McGavock High School, its coaches or administrative personnel from allowing the plaintiff, Michael Crocker, full participation in all interscholastic athletics, pending further orders of this Court.

### B. Plaintiff Metro's Motion to Enjoin Defendant from Imposing Forfeiture of Contests Upon McGavock High School for Games in Which Michael Crocker Participated During the 1988–89 School Year.

#### 1. *Likelihood of Success on the Merits*

Metropolitan Government of Nashville and Davidson County seeks an order enjoining TSSAA from imposing forfeiture of contests upon McGavock High School for games in which Michael Crocker participated during the 1988–89 school year. In 1988, this Court issued a valid order restraining defendant TSSAA from interfering with Michael Crocker's participation for the 1988–89 school year pending a determination by the Metropolitan School Board of the basis for Michael Crocker's transfer from Ezell–Harding School to McGavock High School. Metro followed this Court's Order and allowed Michael Crocker to participate in interscholastic athletics.

The order was ultimately vacated and the Sixth Circuit determined Michael Crocker had failed to exhaust his administrative remedies mandated by the EHA. (*See, Crocker v. Tennessee Secondary School Athletic Association,* 873 F.2d 933 (6th Cir.1989)). However, the Court of Appeals ordered from the bench that Metro not be penalized for complying with this Court's Order allowing Michael Crocker to participate in the 1988–89 sports season. TSSAA subsequently punished plaintiff Metro for abiding by this Court's order, and allowing Michael Crocker to finish out the football season and participate in basketball.

Two cases directly address the situation in which retaliation against a school is a consequence of the school having followed a court order. Both cases strongly suggest that one cannot be punished for following an order of a court.

In *Crandall v. N.D. High School Activities Ass'n,* 261 N.W.2d 921 (N.D.1978), the North Dakota High School Activities Association [NDHSA] appealed from an order of the McHenry County District Court enjoining it from holding a high school transfer student ineligible to participate in interscholastic football or imposing any sanc-

tions upon such student or his high school because of his participation. The Supreme Court of North Dakota held that the NDHSA transfer rules were reasonably related to a legitimate purpose and that NDHSA could impose an ineligibility period upon the student. However, the Court held that the NDHSA should not impose any sanctions or otherwise penalize the high school for allowing the transfer student to play pursuant to a court order.

The Court found that "it would be unjust to penalize or sanction the high school for complying with a court order...." 261 N.W.2d at 927.

In a recent opinion, *Cardinal Mooney High School v. Michigan High School Athletic Ass'n*, 445 N.W.2d 483 (Mich.App. 1989), the Michigan Court of Appeals squarely addressed the issue of whether an athletic association could impose sanctions upon a high school or its staff for complying with a temporary restraining order which allowed plaintiff to participate in interscholastic athletics, but which was ultimately dissolved. The Court held in pertinent part:

> This issue has been before this court on several occasions. We have ruled repeatedly that defendant is precluded from issuing sanctions against students or schools for their permissive participation in athletic events pursuant to a court order.... Fundamental fairness dictates that the school district should not incur any penalty or sanction by virtue of the fact that plaintiff participated in interscholastic sports as permitted by the [court's] restraining order.

445 N.W.2d at 485.

The Court concluded:

> In this case defendant again seeks to ... circumvent a valid court order. Such an application would, in effect, punish the student and the school for exercising their right of access to the judicial system and would render meaningless the circuit court's temporary restraining order ... many schools are now unwilling to depend upon court orders ... because the schools fear MHSAA penalties once the order is lifted.

445 N.W.2d at 486.

The Michigan Court of Appeals ultimately assessed monetary damages against the defendant athletic association and defendant's counsel for "vexatious" proceedings. 445 N.W.2d at 486.

In the present case, Metro allowed Michael Crocker to play in interscholastic sports pursuant to a valid court order. Defendant, upon dissolution of the injunction, retaliated against Metro and Michael Crocker, punishing them for exercising their right of access to the judicial system despite the Court of Appeals' bench statement instructing TSSAA not to take any retaliatory actions. The TSSAA's action further renders meaningless this Court's temporary restraining order.

The effect of TSSAA's action is unjust and outrageous. Fundamental fairness dictates that Metro should not incur any penalty or sanction by virtue of the fact that plaintiff Michael Crocker participated in interscholastic athletics pursuant to a valid court order.

In light of the decisions in *Crandall* and *Cardinal Mooney*, the Court finds that plaintiff Metro is likely to achieve success on the merits.

### 2. *Irreparable Injury*

Should TSSAA be allowed to forfeit the games of McGavock High School in which Michael Crocker played during the 1988–89 season, irreparable injury will be visited upon both Michael Crocker and Metro. Michael Crocker will probably not be allowed to participate in interscholastic sports in the current year because his coaches will fear, despite this Court's order, that at some point later in time the TSSAA will declare the games played this year to be forfeit. As stated above, money damages cannot adequately compensate Michael Crocker for not being allowed to participate in high school athletic contests.

Metro will suffer irreparable injury because it will, in effect, be punished by TSSAA for having followed a valid order of a court. If an injunction does not issue, Metro will be forced to choose between

allowing Crocker to play in contests that the TSSAA will declare forfeit, or benching Crocker to satisfy the TSSAA in violation of the valid order of Administrative Law Judge Mulroy.

### 3. *Substantial Harm to Others*

If the TSSAA imposes sanctions against Metro, it is highly probable that all of McGavock High School's games in which Michael Crocker participated, will be forfeited and all trophies will be withdrawn. This will impact not only upon McGavock High School, and Michael Crocker, but also upon the students who participated alongside Michael Crocker and who had no interest in this action other than as Michael's teammates. The injury visited upon the students who participated alongside Michael will be substantial.

TSSAA will suffer no meaningful harm as a result of an order prohibiting it from declaring certain of McGavock High School's games forfeit. TSSAA's authority and ability to administrate interscholastic athletics in Tennessee will remain intact.

### 4. *Public Interest*

The public interest analysis for this injunction is similar to that which occurred in the previous analysis for plaintiff Crocker's injunction. The public interest lies in preventing retaliation against organizations or persons for following valid court orders.

After a careful balancing of the above-mentioned factors, this Court finds that they weigh in favor of granting a preliminary injunction for Metro. Therefore, this Court hereby ORDERS TSSAA not to impose any sanctions against Metro or Michael Crocker for Metro's decision to allow Michael Crocker to participate in interscholastic athletics during the 1988–89 school year.

An Order is entered in accordance with the reasoning set forth in this Memorandum.